# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WILLIAM D. SHORT**

   **Plaintiff,**

  **v.**

**SHERIFF MARLIN N. GUSMAN, GARY D. MAYNARD, and DARNLEY R. HODGE, SR.**

   **Defendants.**

**CIVIL ACTION NO.: 2:18-CV-3174**

## COMPLAINT

Plaintiff William D. "Daniel" Short asserts his causes of action against defendants Sheriff Marlin N. Gusman (in his official capacity), former Independent Jail Compliance Director Gary D. Maynard (in his official and individual capacities), and Acting Independent Jail Compliance Director Darnley R. Hodge (in his official capacity) as follows:

### THE PARTIES

1. Plaintiff is William D. "Daniel" Short, a person of age and majority, a former Captain of the Orleans Parish Sheriff's Office, and a Louisiana citizen residing in Orleans Parish.

2. Defendant is Sheriff Marlin N. Gusman, in his official capacity, a person of age and majority, the elected Sheriff of Orleans Parish, and a Louisiana citizen residing in Orleans Parish.

3. Defendant is Gary D. Maynard, in both his official and individual capacities, a person of age and majority, the former court-appointed Independent Jail Compliance Director of the Orleans Justice Center, and upon information and belief a Louisiana citizen residing in Orleans Parish.

4. Defendant is Darnley R. Hodge Sr., in his official capacity, a person of age and majority,

the current court-appointed Acting Independent Jail Compliance Director of the Orleans Justice Center, and upon information and belief a Louisiana citizen residing in Orleans Parish.

## JURISDICTION AND VENUE

5.     The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 42 U.S.C. § 1983 (deprivation of rights under color of state law); and the due process clause of the 14th Amendment of the United States Constitution as more particularly set-out herein.

6.     The Court has supplemental, subject-matter jurisdiction over Captain Short's Louisiana state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to his federal law claims that they form part of the same case or controversy as more particularly set-out herein.

7.     The Court has personal jurisdiction over Sheriff Marlin Gusman because he is present within Louisiana at the time this litigation commenced.

8.     Alternatively, the Court has personal jurisdiction over Sheriff Gusman because he occupies an official office within the State of Louisiana, and because he committed the illegal acts against Mr. Short that form the basis of this lawsuit while in Louisiana.

9.     The Court has personal jurisdiction over Gary Maynard because, upon information and belief, he is present within Louisiana at the time this litigation commenced.

10.     Alternatively, the Court has personal jurisdiction over Mr. Maynard as he committed the illegal acts against Mr. Short that form the basis of this lawsuit while in Louisiana.

11.     The Court has personal jurisdiction over Darnley Hodge Sr. because he is present within Louisiana at the time this litigation commenced.

12.     Alternatively, the Court has personal jurisdiction over Mr. Hodge because he occupies a

court-appointed position supervising prison facilities located in Louisiana, and because he is the current decision-maker with respect to the remedies requested by and available to Captain Short in this action.

13.    Venue for Captain Short's claims arising under both federal and state law are proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because, upon information and belief, each defendant resides in this judicial district (specifically, Orleans Parish); and, independently, the defendants' acts collectively giving rise to this lawsuit occurred within the forum (specifically, Orleans Parish).

## FACTS

### A.    The Plaintiff – former Captain Daniel Short

14.    Daniel Short is a Louisiana native who lives with his wife and two young children in Metairie.

15.    Captain Short was employed with the Orleans Parish Sheriff's Office beginning in 2004 and is a 14-year veteran of the OPSO.

16.    Over the years, through exemplary work and dedication to public safety, Captain Short rose through the ranks of OPSO beginning as a deputy and was promoted in 2017 to the rank of Captain.

17.    At all relevant times herein, Captain Short was assigned to the Orleans Justice Center and was tasked with supervising multiple aspects of jail operation during his on-duty shifts.

18.    Prior to Captain Short's termination, it was reasonably likely that he was due for further promotion to the position of Warden of the Orleans Justice Center.

19.    On September 22, 2017, Sheriff Gusman terminated Captain Short's employment.

20.    Alternatively, on September 22, 2017, Director Maynard terminated Captain Short's

employment.

21.     Upon information and belief, at the time of his termination, Captain Short intended to apply for the position of Warden of the Orleans Justice Center and would have received the promotion when the position opened.

**B.      The Defendant – Sheriff Marlin Gusman**

22.     Sheriff Gusman is the duly elected sheriff of Orleans Parish.

23.     Sheriff Gusman is the legal and in-fact employer of all people employed at the Orleans Parish Sheriff's Office.

24.     Under Louisiana state law, Sheriff Gusman is the final decision-maker and policymaker for the office of the Orleans Parish Sheriff.

25.     Upon information and belief, at all relevant times herein, Sheriff Gusman was the final decision-maker and policymaker with respect to hiring and firing of ranking OPSO employees such as those with the rank of captain and above.

26.     Upon information and belief, at all relevant times herein, Sheriff Gusman was the final decision-maker and policymaker with respect to terminating Captain Short's employment.

**C.      The Defendants – Gary Maynard and Darnely Hodge – and the Stipulated Order for Appointment of Independent Jail Compliance Director**

27.     In April 2012, various unrelated plaintiffs filed a class-action lawsuit against Sheriff Gusman alleging systematic federal constitutional violations at the Orleans Parish Prison.  *See Jones et al v. Gusman et al.*, No. 2:12-cv-00859, Division I, United States District Court for the Eastern District of Louisiana.

28.     Relevant here, in June 2016, Sheriff Gusman entered into a Stipulated Order wherein he consented to vest several of his powers and authorities in a court-appointed "Independent Jail Compliance Director."

29.    Per the Stipulated Order, although the Compliance Director is an independent contractor in relation to the OPSO (not an employee), the Director discharges his duties with the stipulated consent and agency of the Sheriff and, thus, discharges his duties under color of Louisiana state law.

30.    At all relevant times herein during Captain Short's employment with OPSO, the court-appointed Compliance Director was Gary Maynard.

31.    At all relevant times herein during Captain Short's employment, and pursuant to Stipulated Order, Mr. Maynard possessed "final authority to . . . discipline [and] terminate . . . employees." *See Jones, supra,* "Stipulated Order for Appointment of Independent Jail Compliance Director," Docket No. 1082, at ¶ 15.

32.    Accordingly, as an alternatively pled allegation, Directory Maynard was the final decision-maker and policymaker for the office of the Orleans Parish Sheriff with respect to personnel and termination decisions at the Orleans Justice Center.

33.    Accordingly, as an alternatively pled allegation, and at all relevant times herein during Captain Short's employment, Director Maynard was the final decision-maker and policymaker with respect to the hiring and firing of ranking OPSO employees.

34.    Accordingly, as an alternatively pled allegation, and at all relevant times herein, Director Maynard was the final decision-maker and policymaker with respect to terminating Captain Short's employment.

35.    Notwithstanding Director Maynard's otherwise plenary authority to terminate OPSO officers and personnel, the Stipulated Order further provided that "individual employees who have attained the rank of captain or higher" were terminable only for, relevant here, "misconduct." *See Jones, supra,* "Stipulated Order for Appointment of Independent Jail

Compliance Director," Docket No. 1082, at ¶ 16.

36.     Thus, by consenting to the terms of Stipulated Order and vesting his final termination authority in the Compliance Director, Sheriff Gusman vested all his senior officers with the rank of captain or above with the right to continued employment but for, relevant here, misconduct.

37.     Accordingly, and at all relevant times herein, Captain Short was not an at-will employee employed by Sheriff Gusman or under the authority of Director Maynard, but had a vested property interest in his continued employment with OPSO and was terminable only for misconduct.

**C.     OPSO Human Resources Conducts Random Drug Tests in Violation of Louisiana State Law**

38.     At all relevant times, the Director of Human Resources at OPSO was Johnette Staes.

39.     Upon information and belief, Director Maynard hired Ms. Staes.

40.     On or about August 2, 2017, Ms. Staes initiated plans for an office-wide random drug screening for all employees.

41.     Upon information and belief, Ms. Staes contracted with a third-party vendor to administer the drug screens, collect employee urine specimens, and arrange for their laboratory testing.

42.     The drug screen was comprised of two components: first, an employee's urine specimen was tested with an on-site drug screen to determine the possible presence of various illegal drugs.

43.     Second, the urine sample was packaged and sent to OPSO's contracted laboratory for scientific testing to determine the presence of various illegal drugs.

44.     On September 6, 2017, Captain Short was selected to submit to a drug screen.

45.     Captain Short did submit to the drug screen.

46.     After receiving notice, Captain Short presented himself to the designated collector inside the Orleans Justice Center.

47.    The collector – that is, the person responsible for collecting Captain Short's specimen – was Roger Smith.

48.    Louisiana state law requires an employer to perform employee drug testing pursuant to the federal Department of Health and Human Services "Substance Abuse Mental Health Services Administration" ("SAMHSA") Guidelines if (1) as a result of the testing "mandatory or discretionary negative employment consequences" will be imposed on the employee, (2) the drug test screens for the presence of, relevant here, opioids and amphetamines, and (3) no other statutory exceptions apply.  *See* La. Rev. Stat. Ann. § 49:1001 *et seq.*

49.    Relevant to this case, as a result of the drug testing in question, mandatory or discretionary negative employment consequences were imposed on Captain Short.

50.    Relevant to this case, the drug testing in question screened for the presence of opioids and amphetamines.

51.    Relevant to this case, the drug testing in question did not fall into any of the statutory exceptions referenced under Louisiana state law.

52.    Accordingly, relevant to this case, Sheriff Gusman, Director Maynard, Johnette Staes, and all other pertinent OPSO officials were required to conduct all employee drug testing in accordance with the federal SAMHSA guidelines.

53.    Relevant to this case, the drug testing performed on Captain Short violated the following SAMHSA guidelines:

- Only a SAMHSA certified collector is authorized to collect an employee's specimen for testing, and upon information and belief Roger Smith was not a SAMHSA-certified collector;

- Mr. Smith did not instruct Captain Short to wash his hands prior to giving his

urine specimen, and Captain Short did not wash his hands;

- Mr. Smith did not unseal the plastic, specimen container in Captain Short's presence;

- After Captain Short deposited his specimen into the container, Mr. Smith did not seal the container in Captain Short's presence;

- Mr. Smith did not give Captain Short an opportunity to sign his name to either the specimen container or the SAMHSA-mandated "control and custody form" used to ensure a particular specimen belongs to its correct donor.

- Upon information and belief, no Medical Review Officer ("MRO") reviewed the results of Captain Short's drug screen to ensure reliability and validity before OPSO's testing laboratory communicated the results to Ms. Staes.

- No MRO attempted to contact Captain Short to assess the alleged validity of the drug screen before OPSO's testing laboratory communicated the results to Ms. Staes.

54.    The cumulative effects of these errors were that OPSO's random drug test of Captain Short violated Louisiana state law and resulted in a test that produced, almost certainly through either false identification or contamination, a false positive result indicating the presence of prohibited drugs.

55.    Specifically, the on-site drug screen tested positive for oxycodone and methamphetamines.

56.    However, laboratory testing conducted by OPSO's contractor, Redwood Toxicology Laboratories, later confirmed that no methamphetamines were actually present in Captain Short's specimen.

57.    Laboratory testing did indicate the presence of oxycodone in Captain Short's specimen.

58.    However, Captain Short has not consumed oxycodone in over two years (and, at that time, Captain Short was under physician care, post surgery, and was lawfully prescribed the medication), and it is factually impossible that any oxycodone could have been present in Captain Short's body or urine specimen.

**D.    OPSO Decision-Makers Unlawfully Terminate Captain Short's Employment Based on the Falsely Identified or Contaminated Specimen**

59.    Upon information and belief, shortly after Captain Short provided his specimen, Roger Smith communicated the "positive" on-site result for methamphetamine and oxycodone to OPSO decision-makers.

60.    In response, Chief Michael Tidwell was ordered by, or requested and received permission from, Sheriff Gusman to suspend Captain Short pending an investigation, and Chief Tidwell did so.

61.    Alternatively, Chief Tidwell was ordered by, or requested and received permission from, Director Maynard to suspend Captain Short pending an investigation, and Chief Tidwell did so.

62.    Then, on or around September 14, 2017, Redwood Toxicology communicated the results of its drug screen to OPSO Human Resources, which included a negative result for methamphetamine but a positive result for oxycodone.

63.    Ms. Staes contacted Captain Short and asked him to produce a prescription for oxycodone.

64.    Captain Short could not produce a current prescription for oxycodone because he had not been presently prescribed oxycodone and had not consumed oxycodone in more than two years.

65.    On September 22, 2017, without any prior notice or opportunity to be heard given to Captain Short, Ms. Staes terminated Captain Short's employment "due to [his] failure to report

for drug screening within the required timeframe, failure to successfully pass a drug screen and failure to provide a supporting prescription."

66.    Upon information and belief, Ms. Staes was ordered by, or asked for and received permission from, Sheriff Gusman to terminate Captain Short's employment, and Ms. Staes did so.

67.    Alternatively, upon information and belief, Ms. Staes was ordered by, or asked for and received permission from, Director Maynard to terminate Captain Short's employment, and Ms. Staes did so.

68.    Upon information and belief, the sole factor motivating Sheriff Gusman or Director Maynard's decision to terminate Captain Short's employment was the false result of OPSO's unlawfully conducted drug screen.

69.    Upon information and belief, any allegation that Captain Short was terminated for not reporting timely for his drug screen is false and pretextual.

70.    In fact, Captain Short reported for his drug screen in a timely manner and did so within the presence of at least two other OPSO officials.

71.    In fact, around the same time and under similar circumstances, such that they were comparators of Captain Short, other OPSO employees waited longer to report for their drug screens than Captain Short, but they were not disciplined, suspended, or terminated.

**E.    OPSO Decision-Makers Unlawfully Terminated Captain Short's Employment Without Providing Him Fundamental Due Process and an Opportunity to Be Heard**

72.    Redwood Toxicology communicated its results to OPSO on or about September 14, 2017.

73.    Ms. Staes, acting under the directive of either Sheriff Gusman or Director Maynard, terminated Captain Short's employment on September 22, 2017.

74.   Ms. Staes alerted Captain Short of his termination, by letter via U.S. mail, only after he had been terminated.

75.   Neither Sheriff Gusman, Director Maynard, Ms. Staes, nor any other OPSO decision-maker provided Captain Short any notice or opportunity to be heard prior to his termination.

76.   Neither Sheriff Gusman, Director Maynard, Ms. Staes, nor any other OPSO decision-maker provided Captain Short any opportunity to be heard after his termination.

77.   OPSO maintains a duly promulgated set of administrative policies that define the procedures and process to be used under various employment situations.

78.   At the time of Captain Short's termination, OPSO Policy 301.23 afforded Captain Short the right to a "Commander's Hearing" or "Chief's Hearing," and for further appellate rights thereafter in the event of an adverse decision, prior to the imposition of any discipline, suspension, or termination for any alleged misconduct.

79.   On September 25, 2017, counsel for Captain Short contacted Ms. Staes along with the general counsel for OPSO, Blake Arcuri, and formally requested in writing such a hearing concerning the propriety of Captain Short's termination.[1]

80.   Upon information and belief, Sheriff Gusman, through Mr. Arcuri, summarily denied Captain Short's request for hearing in violation of OPSO duly promulgated policy.

81.   Upon information and belief, Director Maynard, through Mr. Arcuri, summarily denied Captain Short's request for hearing in violation of OPSO duly promulgated policy.

82.   Separate and apart, Louisiana law affords any employee who is disciplined because of an employee drug screen certain procedural rights that include access to information relating to that

---

[1]   In counsel's letter to Mr. Arcuri, Captain Short requested a "Sheriff's Hearing" pursuant to the OPSO predecessor policy to 301.23.  Upon information and belief, the protections afforded under the prior Sheriff's Hearing or the current Chief's Hearing is substantively the same.  In

drug screen. *See* La. Rev. Stat. Ann. § 49:1011(A) (so providing).

83.     On September 22, 2017, counsel for Captain Short contacted Ms. Staes and Mr. Arcuri and formally requested in writing all records pertaining to Captain Short's drug screen and the certification of those people and laboratories involved in the collection and testing of Captain Short's specimen.

84.     OPSO decision-makers, through Mr. Arcuri, failed to provide any record regarding the certification (or lack thereof) of OPSO's contracted collector, Roger Smith.

85.     Counsel for Captain Short requested that OPSO direct Redwood Toxicology to transfer custody of Captain Short's "sample B" urine specimen to Captain Short's designated testing laboratory so that additional confirmatory testing could be done.

86.     OPSO or its contractor, Redwood Toxicology, failed to do so.

87.     The cumulative effect of these actions by OPSO decision-makers, either acting under orders by, or after requesting and receiving permission from, Sheriff Gusman or Director Maynard, is that Captain Short was denied the process that he was due: specifically, notice of his pending termination prior to the adverse employment action and a pre-termination opportunity to be heard; and, separate and apart, a Chief's or Commander's Hearing to contest the propriety of his termination for alleged misconduct, and a substantive appeal from any adverse employment action.

**F.     OPSO Decision-Makers Unlawfully Terminated Captain Short's Employment Without Providing Him Due Process Under Louisiana State Law and in Violation of Louisiana State Law**

88.     Louisiana Revised Statute 49:1001 *et seq*. codifies the Louisiana Employee Drug Testing Law (hereinafter the "LEDTL").[2]

---

[2] It does not appear that the Louisiana legislature codified a short title for LA. REV. STAT. ANN.

89.     If an employer uses the result of an employee drug screen to impose discipline or termination on an employee, the LEDTL requires that the employer administer the screen pursuant to the federal SAMHSA guidelines.

90.     In a formal advisory opinion on the matter, the Louisiana Attorney General notes that "[t]he legislative framework [of the LEDTL] is designed to ensure that drug tests must meet certain standards that guarantee reliability and accuracy before they can be used to support mandatory or discretionary consequences to an individual [employee]." *La. Atty. Gen. Op.* 99-0100A (Aug. 30, 1999).

91.     In this case, at all relevant times, OPSO and its contractors failed to administer Captain Short's drug screen pursuant to the federal SAMHSA guidelines.

92.     Roger Smith, the collector, violated multiple SAMHSA guidelines such that the drug screen produced a false positive result because of either contamination or false identification.

93.     Upon information and belief, Redwood Toxicology, the testing laboratory, violated SAMHSA guidelines by failing to have a Medical Review Officer review its test results or contact Captain Short before communicating the results to OPSO.

94.     Ms. Staes, acting under the directive of either Sheriff Gusman or Director Maynard, then terminated Captain Short's employment based on that false positive result.

95.     Procedurally, the cumulative effect of these actions by OPSO decision-makers and their contractors, either acting under orders by, or after requesting and receiving permission from, Sheriff Gusman or Director Maynard, is that Captain Short was denied the process that he was due: specifically, protection from unlawful termination in violation of the LEDTL.

96.     Substantively, the cumulative effect of these actions by OPSO decision-makers and their

---

49:1001 *et seq*.   For brevity and readability, plaintiff has provided the descriptive title "Louisiana Employee Drug Testing Law" (LEDTL).

contractors, either acting under orders by, or after requesting and receiving permission from, Sheriff Gusman or Director Maynard, is that Captain Short was terminated in violation of the LEDTL.

**G.    OPSO Decision-Makers Falsely Report That Captain Short Failed a Drug Test for Cocaine and Methamphetamine**

97.    Upon information and belief, Chief Tidwell's executive assistant, Phillip Sylas, and additionally OPSO Chief Michael Laughlin, communicated false information to one or more OPSO employees who were not authorized to receive information about Captain Short's drug screen: specifically, that Captain Short failed a drug screen by testing positive for both cocaine and methamphetamine.

98.    Upon information and belief, both Mr. Sylas and Chief Laughlin additionally communicated false information to one or more members of the law enforcement community unaffiliated with OPSO: specifically, that Captain Short failed a drug screen by testing positive for both cocaine and methamphetamine.

99.    Upon information and belief, Chief Tidwell originally communicated this false information to Mr. Sylas and was either the direct or original source of the false information communicated to Chief Laughlin.

100.    Alternatively, upon information and belief, multiple other OPSO officers repeated this false information to others outside of OPSO, and Chief Tidwell purposefully or negligently allowed Mr. Sylas, Chief Laughlin, and others access to personal meetings, drug testing, and other sensitive information from which they formed this false belief.

101.    Upon information and belief, neither Sheriff Gusman, Director Maynard, Chief Tidwell, nor any other OPSO decision-maker exercised adequate control over access to, or dissemination of, drug testing information associated with Captain Short sufficient to prevent false reporting to

unauthorized persons.

102.     Upon information and belief, Sheriff Gusman, Director Maynard, Chief Tidwell, and other OPSO decision-makers actually knew or should have known that OPSO employees, including Mr. Sylas, Chief Laughlin, and others, were repeating and publishing false information about Captain Short that was both defamatory in nature and lessened or eliminated his ability to find new work within the law enforcement community, and yet Sheriff Gusman, Director Maynard, Chief Tidwell, and others did nothing to stop or correct the defamation.

103.     At present, many people employed by multiple law enforcement agencies around Louisiana, including Jefferson Parish Sheriff's Office, Tangipahoa Parish Sheriff's Office, and Plaquemines Parish Sheriff's Office, have been told that Captain Short's employment with OPSO was terminated because he tested positive for cocaine and methamphetamine.

104.     Upon information and believe, the source of these false reports is Chief Tidwell, Mr. Sylas, Chief Laughlin, and other OPSO officers.

105.     It is factually untrue that any drug screen associated with Captain Short reported a positive result for cocaine.

106.     Captain Short has never consumed cocaine.

107.     Likewise, any drug screen associated with Captain Short that indicated a positive result for methamphetamine is false, predicated on OPSO's failure to comply with the provisions of the Louisiana Employee Drug Testing Law, and was specifically contraindicated by Redwood Toxicology's subsequent confirmation testing.

108.     Captain Short has never consumed methamphetamine.

**H.     Captain Short Had a Vested Right to His Continued Employment with OPSO**

109.     Relevant here, pursuant to OPSO's own duly promulgated policies, Captain Short's

continued employment was guaranteed except after contradictory Chief's Hearing or Commander's Hearing and exhaustion of appellate rights.

110.   Relevant here, pursuant to the Stipulated Order to which Sheriff Gusman consented, Captain Short's continued employment was guaranteed except for misconduct.

111.   Relevant here, pursuant to the Louisiana Employee Drug Testing Law, Captain Short's continued employment was guaranteed except for failing a drug screen that complied with the provisions of the LEDTL and federal SAMHSA guidelines.

112.   Ms. Staes, acting under orders by, or after requesting and receiving permission from, Sheriff Gusman or Director Maynard terminated Captain Short's employment in violation of OPSO duly promulgated policies, the Stipulated Order, and the LEDTL.

## I.   Sheriff Gusman and Director Maynard Knew or Should Have Known That Captain Short's Termination Was Unlawful

113.   Upon information and belief, at all relevant times to this lawsuit, both Sheriff Gusman and Directory Maynard had actual knowledge that, per OPSO duly promulgated personnel policy, Captain Short could not be terminated except after contradictory Chief's or Commander's Hearing and exhaustion of appellate rights.

114.   Alternatively, any reasonable decision-maker in Sheriff Gusman or Director Maynard's position would have known that, per OPSO duly promulgated personnel policy, Captain Short could not be terminated except after contradictory Chief's or Commander's Hearing and exhaustion of appellate rights.

115.   Upon information and belief, at all relevant times to this lawsuit, both Sheriff Gusman and Directory Maynard had actual knowledge that, per the June 2016 Stipulated Order, Captain Short could not be terminated except for misconduct.

116.   Alternatively, any reasonable decision-maker in Sheriff Gusman or Director Maynard's

position would have known that, per the June 2016 Stipulated Order, Captain Short could not be terminated except for misconduct.

117.    Upon information and belief, at all relevant times to this lawsuit, both Sheriff Gusman and Directory Maynard had actual knowledge that, per the Louisiana Employee Drug Testing Law, Captain Short could not be terminated except for failing a drug screen that complied with the provisions of the LEDTL and federal SAMHSA guidelines.

118.    Alternatively, any reasonable decision-maker in Sheriff Gusman or Director Maynard's position would have known that, per the Louisiana Employee Drug Testing Law, Captain Short could not be terminated except for failing a drug screen that complied with the provisions of the LEDTL and federal SAMHSA guidelines.

119.    Upon information and belief, at relevant times to this lawsuit, both Sheriff Gusman and Directory Maynard had actual knowledge that, per clearly established federal Supreme Court and Fifth Circuit case law interpreting clearly established constitutional law, Captain Short could not be terminated from his vested employment without pre-termination notice and an opportunity to be heard, or when the basis of the termination was false, stigmatizing, and would impair his ability to find re-employment.

120.    Alternatively, any reasonable decision-maker in Sheriff Gusman or Director Maynard's position would have known that, per clearly established federal Supreme Court and Fifth Circuit case law interpreting clearly established constitutional law, Captain Short could not be terminated from his vested employment without pre-termination notice and an opportunity to be heard, or when the basis of the termination was false, stigmatizing, and would impair his ability to find re-employment.

121.    Alternatively, at all relevant times to this lawsuit, Sheriff Gusman and Director Maynard

had actual knowledge that their subordinate OPSO employees intended to terminate Captain Short from his vested employment without pre-termination notice or an opportunity to be heard, but were recklessly and callously indifferent to the rights of Captain Short, and did nothing to stop the unlawful termination.

**J.    Sheriff Gusman and Director Maynard Acted Under Color of Louisiana State Law**

122.   At all relevant times as alleged herein, each decision made by Sheriff Gusman regarding the termination of Captain Short, including his denial of pre-termination notice and opportunity to be heard, was made in the course and scope of Sheriff's Gusman's authority and duties as the Sheriff of Orleans Parish and was done under color of Louisiana state law.

123.   At all relevant times as alleged herein, each decision made by Director Maynard regarding the termination of Captain Short, including his denial of pre-termination notice and opportunity to be heard, was made in the course and scope of Director Maynard's authority and duties as the Compliance Director pursuant to the authority and agency vested in him by Sheriff Gusman per the terms of the Stipulated Order and was done under color of Louisiana state law.

**K.    The Aftermath – OPSO Destroys Captain Short's Career and Ruins His Reputation in the Law Enforcement Community**

124.   Captain Short was unlawfully terminated on September 22, 2017.

125.   Because of his unlawful termination, and despite his diligent efforts to find reemployment, Captain Short remains unemployed and out a significant amount in lost wages.

126.   Because of his unlawful termination, Captain Short has lost his health insurance and now relies on his spouse's health insurance.

127.   Because of his unlawful termination, Captain Short has been ejected from the OPSO pension program and is out a significant amount of future lost income.

128.   Because of his unlawful termination, Captain Short has been denied continued

advancement with OPSO, specifically including a likely promotion to Warden of the Orleans Justice Center, and the lost future income that promotion would have earned.

129.    Because his unlawful termination was predicated on false accusations of illegal drug use, Captain Short's reputation in the law enforcement community has been ruined.

130.    Because OPSO employees communicated false information that Captain Short was terminated for testing positive for cocaine and methamphetamine, Captain Short's reputation in the law enforcement community has been ruined.

131.    Because his unlawful termination was predicated on false accusations of illegal drug use, Captain Short will likely never be offered employment in law enforcement for the rest of his life.

132.    Because his unlawful termination was predicated on false accusations of illegal drug use, Captain Short has experienced extreme mental anguish and emotional distress, not from not only the professional humiliation of the wrongful termination, but also because of resulting financial instability and family humiliation as well.

133.    Because OPSO employees communicated false information indicating that Captain Short was terminated for failing a drug screen for cocaine and methamphetamine, Captain Short has experienced extreme mental anguish, emotional distress, and humiliation.

134.    Because of his unlawful termination, Captain Short is out significant out-of-pocket expenses, including but not limited to actual attorney's fees and costs associated with brining this lawsuit.

### CAUSES OF ACTION

**A.    Unlawful Termination Under the 14th Amendment through Section 1983 Against Sheriff Gusman in His Official Capacity**

135.    42 U.S.C. § 1983 is the proper vehicle to assert violations of rights guaranteed under the Fourteenth Amendment against a person acting under color of state law.  *See Collins v. City of*

*Harker Heights, Tex.*, 503 U.S. 115, 119–20 (1992) (so holding).   To establish a claim for violation of federal rights through Section 1983, a plaintiff must show "(1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor."   *Givs v. City of Eunice*, 512 F.Supp.2d 522, 542 (W.D. La. 2007), *aff'd* 268 Fed. Appx. 305 (5th Cir. 2008).

136.    Under Louisiana state law, the elected Sheriff is not an arm of the state and is not entitled to Eleventh Amendment immunity from suit in federal court.   *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002) (so holding).   In other words, "a suit against a sheriff is not a suit against the state, but a suit against a political subdivision, the sheriff's office."   *Hebert v. Maxwell*, CV-03-1739-A, 2005 WL 2429174 at *4 (W.D. La. Sept. 30, 2005).   Because the elected Sheriff is a local governmental unit, the Sheriff, sued in his official capacity, may not raise the defense of qualified immunity.   *See, e.g.*, *Hampton Co. Nat. Sur., LLC v. Tunica Cty., Miss.*, 543 F.3d 221, 226 (5th Cir. 2008) (noting that a Sheriff sued in his individual capacity may raise the defense of qualified immunity, but that local governmental units may not).

137.    A public employer, such as a Sheriff, may not terminate an employee who has bona fide property or liberty interest in his continued employment without due process.   *Whiting v. Univ. of S. Mississippi*, 451 F.3d 339, 344 (5th Cir. 2006) (examining the jurisprudence).

138.    "A public employee has a property interest in his job within the meaning of the due process clause[] . . . if he can be fired only for misconduct or 'just cause.'"   *Givs v. City of Eunice*, 512 F.Supp.2d 522, 545 (W.D. La. 2007) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)).   The Fourteenth Amendment does not create property interests, instead "they are created and their dimensions are defined by existing rules or understandings that stem

from an independent source such as state law." *Schaper v. City of Huntsville*, 813 F.2d 709, 713–14 (5th Cir. 1987).  In addition to state law, an employer's duly promulgated personnel policies can create a property interest.  *Id.* (holding that City's personnel policies that provided for termination only for "just cause" created a property right protected by Fourteenth Amendment due process clause).

139.    Absent other state law or applicable personnel policies that provide greater protections, due process requires at least "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotations omitted).  Although the hearing need not be "elaborate," the hearing must provide an opportunity to be heard before the "decisionmaker." *Id.* at 543-45.  Ultimately, the litmus test is whether the employee was given "effective notice and [an] informal hearing permitting the [employee] to give his version of the events [sufficient to] provide a meaningful hedge against erroneous action." *Id.* at 543 n. 8.

140.    Alternatively, a public employer deprives an employee of his liberty interest to earn and make a living within he meaning of the due process clause when the reason for termination is "(i) false, (ii) publicized, and (iii) stigmatizing to his standing reputation in his community" or if the employee is "terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) he was denied other employment opportunities as a result." *Whiting*, 451 F.3d at 347 (5th Cir. 2006).

141.    In cases against the Sheriff in his official capacity, Section 1983 liability attaches when the Sheriff himself is the final policymaker and takes the action that "is the moving force behind and direct cause of the alleged injury." *Hampton Co. Nat. Sur., LLC v. Tunica Cty., Miss.*, 543 F.3d 221, 227 (5th Cir. 2008).

142.    In cases against a Louisiana Sheriff in his official capacity, an employee is entitled to his compensatory damages, including back wages, mental anguish damages, out-of-pocket expenses, and reasonable attorney's fees and litigation costs.

143.    In this case, as pled throughout this complaint, Sheriff Gusman was the final decision-maker and policymaker regarding Captain Short's employment, all duly promulgated personnel policies, and the decision to consent to the provisions of the Stipulated Order.  Likewise, upon information and belief, Sheriff Gusman was the person who actually terminated Captain Short's employment (either directly or per directive to Ms. Staes) for purportedly failing his drug screen.

144.    As pled throughout this complaint, Captain Short had a property interest in his continued employment with the Orleans Parish Sheriff's Office as created by the personnel policies duly promulgated by Sheriff Gusman that protected Captain Short from termination except after contradictory Chief's Hearing or Commander's Hearing.

145.    Alternatively, as pled throughout this complaint, Captain Short had a property interest in his continued employment with the Orleans Parish Sheriff's Office as created by the Stipulated Order consented to by Sheriff Gusman that protected Captain Short from termination except for "misconduct."

146.    Alternatively, as pled throughout this complaint, Captain Short had a property interest in his continued employment with the Orleans Parish Sheriff's Office as created by the Louisiana Employee Drug Testing Law that protected Captain Short from termination except based on employee drug testing that complied with the provisions of the LEDTL and related federal SAMHSA guidelines.

147.    Nevertheless, Sheriff Gusman terminated Captain Short without pre-termination notice or an opportunity to be heard before (or after) termination, and this termination decision deprived

Captain Short of minimal 14th Amendment due process protections.

148.    Alternatively and additionally, in this case, as pled throughout this complaint, Sheriff's Gusman's termination decision deprived Captain Short of his liberty interest to earn a living and obtain re-employment because the motivating basis for the termination – that Captain Short allegedly and unlawfully consumed controlled dangerous substances – was (i) false, (ii) publicized, and (iii) stigmatizing to his standing reputation in his community.  Likewise, upon information and belief, the basis for the termination decision was (i) false and (ii) had a stigmatizing effect such that (iii) Captain Short will be denied other employment opportunities as a result.

149.    Specifically, the basis for the termination decision was false because Captain Short has not consumed oxycodone for at least two years at it is a factual impossibility that oxycodone was present in Captain Short's body or urine specimen.  Next, upon information and belief, Sheriff Gusman's officers repeatedly (and inexplicably) publicized to other members of the law enforcement community outside of the OPSO that Captain Short was terminated for consuming or failing a drug screen for cocaine and methamphetamine.  Finally, the false information, both per se and in fact, stigmatized Captain Short's standing in the community and does or will have the effect of precluding Captain Short from working for any other law enforcement employer.

150.    At all relevant times as alleged herein, each decision made by Sheriff Gusman regarding the termination of Captain Short was made in the course and scope of Sheriff's Gusman's authority and duties as the Sheriff of Orleans Parish and was done under color of Louisiana state law.

151.    Accordingly, Sheriff Gusman is liable for all of Captain Short's damages resulting from the deprivation of Captain Short's property and liberty interest in his continued employment with

OPSO, including but not limited to lost back wages, lost future wages, reinstatement, mental anguish, reputational damages, out-of-pocket expenses, any other compensatory damages, and reasonable attorney's fees and litigation costs.

**B.      Unlawful Termination Under the 14th Amendment through Section 1983 Against Former Director Maynard in His Official and Individual Capacities**

152.    In addition to bringing a claim against an actor in his or her official capacity (as described above), a plaintiff may bring a Section 1983 claim against a state actor in his or her individual capacity.  *See generally Hafer v. Melo*, 502 U.S. 21, 27 (1991) (so holding and describing the differences between official-capacity and personal-capacity suits).  "The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."  *Id.* at 31.

153.    In this case, as alternatively pled throughout this complaint, Director Maynard, acting under the provisions of the Stipulated Order, was the chief policymaker and decision-maker regarding Captain Short's employment and all duly promulgated personnel policies.  Likewise, upon information and belief, Director Maynard was the person who actually terminated Captain Short's employment (either directly or per directive to Ms. Staes) for purportedly failing his drug screen.

154.    As pled throughout this complaint, Captain Short had a property interest in his continued employment with the Orleans Parish Sheriff's Office as created by the personnel policies duly promulgated by Sheriff Gusman or Director Maynard that protected Captain Short from termination except after contradictory Chief's Hearing or Commander's Hearing.

155.    Alternatively, as pled throughout this complaint, Captain Short had a property interest in his continued employment with the Orleans Parish Sheriff's Office as created by the Stipulated Order consented to by Sheriff Gusman that protected Captain Short from termination except for

"misconduct."

156.   Alternatively, as pled throughout this complaint, Captain Short had a property interest in his continued employment with the Orleans Parish Sheriff's Office as created by the Louisiana Employee Drug Testing Law that protected Captain Short from termination except based on employee drug testing that complied with the provisions of the LEDTL and related federal SAMHSA guidelines.

157.   Nevertheless, Director Maynard terminated Captain Short without pre-termination notice and an opportunity to be heard before (or after) termination, and this termination decision deprived Captain Short of minimal 14th Amendment due process protections.

158.   Alternatively and additionally, in this case, as pled throughout this complaint, Director Maynard's termination decision deprived Captain Short of his liberty interest to earn a living and obtain re-employment because the motivating basis for the termination – that Captain Short allegedly and unlawfully consumed controlled dangerous substances – was (i) false, (ii) publicized, and (iii) stigmatizing to his standing reputation in his community.  Likewise, upon information and belief, the basis for the termination decision was (i) false and (ii) had a stigmatizing effect such that (iii) Captain Short will be denied other employment opportunities as a result.

159.   Specifically, the basis for the termination decision was false because Captain Short has not consumed oxycodone for at least two years at it is a factual impossibility that oxycodone was present in Captain Short's body or urine specimen.  Next, upon information and belief, OPSO officers repeatedly (and inexplicably) publicized to other members of the law enforcement community outside of the OPSO that Captain Short was terminated for consuming or failing a drug screen for cocaine and methamphetamine.  Finally, the false information, both per se and in

fact, stigmatized Captain Short's standing in the community and does or will have the effect of precluding Captain Short from working for any other law enforcement employer.

160.    At all relevant times as alleged herein, each decision made by Director Maynard regarding the termination of Captain Short was made in the course and scope of his authority and duties as Compliance Director of the Orleans Justice Center pursuant to the authority conferred upon him by virtue of Sheriff Gusman's consent to the Stipulated Order and was done under color of Louisiana state law.

161.    Additionally, at all times, Director Maynard knew that his conduct was unlawful under clearly established federal and Louisiana law and violated Captain Short's procedural due process rights pursuant to the 14th Amendment of the United States, and yet Director Maynard persisted despite that knowledge.

162.    Alternatively, any reasonable person in Director Maynard's position would have known that his conduct was unlawful under clearly established federal and Louisiana law and violated Captain Short's procedural due process rights pursuant to the 14th Amendment of the United States.

163.    Accordingly, Director Maynard is liable in his official capacity for all of Captain Short's damages resulting from the deprivation of Captain Short's property and liberty interest in his continued employment with OPSO, including but not limited to lost back wages, lost future wages, mental anguish, reputational damages, out-of-pocket expenses, any other compensatory damages, and reasonable attorney's fees and litigation costs.

164.    Alternatively, Director Maynard is liable in his individual capacity for all of Captain Short's damages resulting from the deprivation of Captain Short's property and liberty interest in his continued employment with OPSO, including but not limited to lost back wages, lost future

wages, mental anguish, reputational damages, out-of-pocket expenses, any other compensatory damages, punitive damages, and reasonable attorney's fees and litigation costs.

**C.      Unlawful Termination Pursuant to the Louisiana Employee Drug Testing Law Against Sheriff Gusman and Director Maynard**

165.    Pursuant to 28 U.S.C. § 1367(a), Captain Short brings a cause of action for unlawful termination in violation of La. Rev. Stat. Ann. § 49:1001 *et seq.* against Sheriff Gusman and, separately and alternatively, Director Maynard.

166.    In this case, as alleged throughout this complaint, Captain Short's state law claims "derive from a common nucleus of operative fact," and are so related to his federal law claims that, accordingly, they form part of the same case or controversy as more particularly set-out herein. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165-66 (1997).

167.    Accordingly, this Court has discretion to adjudicate Captain Short's state law claim in this matter pursuant to the Court's statutory, supplemental jurisdiction.

168.    Captain Short hereby requests the Court to exercise its supplemental jurisdiction over Captain Short's state law claims.

169.    Specifically, the Louisiana Employee Drug Testing Law requires an employer to perform employee drug testing pursuant to the federal Department of Health and Human Services "Substance Abuse Mental Health Services Administration" ("SAMHSA") Guidelines if (1) as a result of the testing "mandatory or discretionary negative employment consequences" will be imposed on the employee, (2) the drug test screens for the presence of, relevant here, opioids and amphetamines, and (3) no other statutory exceptions apply. *See* La. Rev. Stat. Ann. § 49:1001 *et seq.*

170.    The Louisiana Attorney General has issued a formal opinion that an employer may not terminate an employee in violation of the LEDTL.  Specifically, "[i]f any mandatory or

discretionary consequence is rendered [on]an employee or an applicant, as a result of a positive drug test performed in a [way] that does not conform to statutory requirements, such a 'consequence' would violate law." *La. Atty. Gen. Op.* 99-0100A (Aug. 30, 1999).

171. In this case, Sheriff Gusman, either directly or through his agents, compelled Captain Short to submit to an employee drug test, specifically screening for both amphetamines and opiates, in which mandatory or discretionary consequences were imposed.

172. Alternatively, Director Maynard, either directly or through his agents, compelled Captain Short to submit to an employee drug test, specifically screening for both amphetamines and opiates, in which mandatory or discretionary consequences were imposed.

173. The LEDTL requires all such testing to be performed pursuant to federal SAMHSA guidelines. No statutory exceptions exist in this case that would exempt OPSO from the provisions of the LEDTL.

174. Upon information and belief, OPSO's contracted collector, Roger Smith, and OPSO's contracted testing laboratory, Redwood Toxicology, violated multiple SAMHSA guidelines during the collection and testing of Captain Short's sample. Specifically:

- Only a SAMHSA certified collector is authorized to collect an employee's specimen for testing, and upon information and belief Roger Smith was not a SAMHSA-certified collector;

- Mr. Smith did not instruct Captain Short to wash his hands prior to giving his urine specimen, and Captain Short did not wash his hands;

- Mr. Smith did not unseal the plastic, specimen container in Captain Short's presence;

- After Captain Short deposited his specimen into the container, Mr. Smith did not

seal the container in Captain Short's presence;

- Mr. Smith did not give Captain Short an opportunity to sign his name to either the specimen container or the SAMHSA-mandated "control and custody form" used to ensure a particular specimen belongs to its correct donor.

- Upon information and belief, no Medical Review Officer ("MRO") reviewed the results of Captain Short's drug screen to ensure reliability and validity before OPSO's testing laboratory communicated the results to Ms. Staes.

- No MRO attempted to contact Captain Short to assess the alleged validity of the drug screen before OPSO's testing laboratory communicated the results to Ms. Staes.

175.   Afterwards, based on the false positive result, or the misattribution of the positive result to Captain Short, Sheriff Gusman, through his agent Ms. Staes, imposed mandatory or discretionary consequences on Captain Short and terminated him.

176.   Alternatively, based on the false positive result, or the misattribution of the positive result to Captain Short, Director Maynard, through his agent Ms. Staes, imposed mandatory or discretionary consequences on Captain Short and terminated him.

177.   Ultimately, Sheriff Gusman terminated Captain Short's employment in violation of the LEDTL.

178.   Accordingly, Sheriff Gusman is liable to Captain Short for all his reasonably foreseeable damages caused by his unlawful termination, including back wages, front wages, mental anguish, out-of-pocket expenses, compensatory damages, and litigation costs.

179.   Alternatively, Director Maynard terminated Captain Short's employment in violation of the LEDTL.

180.    Accordingly, Director Maynard is liable to Captain Short for all his reasonably foreseeable damages caused by his unlawful termination, including back wages, front wages, mental anguish, out-of-pocket expenses, compensatory damages, and litigation costs.

**D.    Injunctive Relief Against Sheriff Gusman and Director Hodge to Reinstate Captain Short's Employment with OPSO**

181.    To the extent that Sheriff Gusman remains the final decision-maker with respect to all hiring decisions at OPSO and that this Court rules in favor of Captain Short on any of his wrongful termination claims as pled throughout this complaint, then Captain Short also requests that the Court enter an injunction ordering Sheriff Gusman to reinstate Captain Short to his former position of Captain, with all appropriate salary and benefits that he enjoyed prior to termination and that he would otherwise be entitled to at the rank of Captain (or, as pled herein, the promoted rank of Warden of the Orleans Justice Center had he not been unlawfully terminated) and with no adverse employment consequences whatsoever on account of Captain Short's leave of absence from the time of termination to the time of reinstatement.

182.    Alternatively, to the extent that Director Maynard no longer serves as the Compliance Director pursuant to the Stipulated Order; that Director Hodge is the current, Acting Compliance Director; that Director Hodge is, at present, the final decision-maker with respect to all hiring decisions at OPSO; and that this Court rules in favor of Captain Short on any of his wrongful termination claims as pled throughout this complaint, then Captain Short also requests that the Court enter an injunction ordering Director Hodge to reinstate Captain Short to his former position of Captain, with all appropriate salary and benefits that he enjoyed prior to termination and that he would otherwise be entitled to at the rank of Captain (or, as pled herein, the promoted rank of Warden of the Orleans Justice Center had he not been unlawfully terminated) and with no adverse employment consequences whatsoever on account of Captain Short's leave of

absence from the time of termination to the time of reinstatement.

## JURY TRIAL

Captain Short requests a trial by jury on all issues and causes of action in this matter.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff William D. "Daniel" Short prays that his complaint be deemed good and sufficient; that it and summons be served upon defendants Marlin Gusman, Gary Maynard, and Darnley Hodge; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendants, for all damages and equitable relief due to plaintiff, including back pay, front pay or reinstatement, compensatory damages, non-compensatory damages, punitive damages (as to Director Maynard in his individual capacity only), costs, reasonable attorney's fees, and legal interest from the date of demand, and for all other general and equitable relief required to make-whole the plaintiff to which he is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email: vogeltanz@gmail.com

*Counsel for William D. "Daniel" Short*

**Clerk of Court:**
**Please hold service while counsel attempts to secure wavier of summons.**