## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| **WILLIAM D. SHORT**<br><br>　　　　　**Plaintiff,**<br><br>　**v.**<br><br>**SHERIFF MARLIN N. GUSMAN, GARY D. MAYNARD, and DARNLEY R. HODGE, SR.**<br><br>　　　　**Defendants.** | **CIVIL NO.: 2:18-CV-03174-CJB-DEK** |

### PLAINTIFF WILLIAM SHORT'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiff William D. Short, former Captain and 14-year veteran of the Orleans Parish Sheriff's Office, respectfully opposes the *Motions to Dismiss* filed by defendants Darnley Hodge and Gary Maynard (the "Compliance Directors") (Rec. No. 37) and Sheriff Gusman (Rec. No. 38).  The defendants' arguments are simply not supported by the well-pleaded allegations in this case or the decisional law of this circuit.  Instead, as argued below, the defendants are not entitled to any immunity, and Captain Short states causes of action clearly authorized under law. Accordingly, the defendants' motions should be denied.

### II.　　RELEVANT FACTUAL ALLEGATIONS

On a motion to dismiss under Rule 12(b)(6), "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  In this case, Captain Short's First Amended and Restated Complaint carefully sets out the specific facts based on existing evidence that support each element of his causes of action.  Relevant here, Captain Short's allegations fall into 7 groups:

A.   During settlement negotiations in the *Jones v. Gusman et al.* prison reform litigation, Sheriff Gusman voluntarily and contractually agreed to vest his employment authority in an independent contractor whom he personally appointed, Gary Maynard (and later, Darnley Hodge);[1]

B.   Sheriff Gusman specifically negotiated that Captain Short, along with all other senior OPSO officials, became vested with guaranteed, public employment and was only terminable for cause;[2]

C.   Either Sheriff Gusman or Director Maynard forced Captain Short to submit to a workplace drug test conducted in violation of Louisiana state law;[3]

D.   The drug test was botched and yielded a false positive result for oxycodone;[4]

E.   Either Sheriff Gusman or Director Maynard terminated Captain Short without affording him his pre- and post-termination due process;[5]

F.   The basis for Captain Short's termination was false, publicized, stigmatizing, and will prevent Captain Short from obtaining other work in law enforcement;[6]

G.   The current Compliance Director who holds reinstatement authority over Captain Short's employment is Darnley Hodge.[7]

More specifically, in 2012, Sheriff Gusman was sued by the United States Government and the class plaintiffs in *Jones et al v. Gusman et al.*, No. 2:12-cv-00859, Division I, Eastern District of Louisiana.  This litigation ultimately culminated in Sheriff Gusman's decision to appoint an "Independent Contractor" who would serve as the OPSO "Independent Jail Compliance Director."  Sheriff Gusman agreed to pay the Compliance Director's salary, provide him with office space at the Orleans Justice Center, and pay for his necessary staff and equipment.  By agreement, the litigants would nominate two or three candidates; then Sheriff Gusman would choose his Compliance Director; then the court would approve the selection; and

---

[1] First Amended and Restated Complaint ("Amended Complaint") (Rec. No. 1) at ¶ 27-34.
[2] Amended Complaint at ¶ 35-37.
[3] Amended Complaint at ¶ 38-45.
[4] Amended Complaint at ¶ 46-58.
[5] Amended Complaint at ¶ 72-87.
[6] Amended Complaint at ¶ 97-108, 124-34.
[7] Amended Complaint at ¶ 182.

Sheriff Gusman would appoint the nominee to the position.  Importantly, Sheriff Gusman did not agree, and the Stipulated Order did not allow, the Court to select or appoint the Compliance Director.  The Court could exercise veto authority over the nominee, but in that circumstance the process would simply start over again.  Sheriff Gusman held the contractual, final, and sole authority to appoint the Compliance Director.

These terms were reflected in the negotiated settlement agreement, later ratified and approved by the *Jones* court, in the Stipulated Order.  In August 2016, Sheriff Gusman appointed Gary Maynard as his Compliance Director.  The *Jones* court entered an order "approving" Sheriff Gusman's appointment on September 15, 2016.[8]

Finally, pursuant to paragraph (D)(15) of the Stipulated Order, Sheriff Gusman agreed to vest his Compliance Director with Sheriff Gusman's full employment authority over his employees.  Quoting from the Stipulated Order:

> **The Compliance Director will have final authority to** create, modify, abolish or transfer employee and contractor positions; to recruit, hire, discipline, **terminate,** promote, demote, transfer, and evaluate **employees** and contractors and will recommend increased compensation for staff to the extent necessary to obtain compliance with this Court's orders, the cost of such activity to be included in the Compliance Director's Jail budget.

Stipulated Order at 12 ¶ 15.

Nevertheless, under paragraph (D)(16) of the Stipulated Order, Sheriff Gusman contractually protected his highest-ranking employees from at-will termination by making them terminable only for certain causes:

> **Notwithstanding the authority described in Paragraph D.15 above**, with regard to (1) **individual employees who have attained the rank of Captain** or higher, and (2) contractors, **termination of employment will be for misconduct,**

---

[8] The text of the *Jones* court's order approving the appointment of Mr. Maynard reads: "**IT IS ORDERED** that the appointment of Gary D. Maynard as Independent Jail Compliance Director is **APPROVED**." *See Jones*, Rec. No. 1097 (emphasis in original).

3

> failing to satisfy job expectations, financial prudence, operational efficiency, or
> inhibiting progress toward Consent Judgment compliance.

Stipulated Order at 12 ¶ 16.  As alleged in Captain Short's Amended Complaint, this provision was specifically negotiated by Sheriff Gusman as a brokered compromise with the plaintiffs (who initially wanted the Compliance Director to have at-will termination authority over all OPSO employees regardless of rank), and all parties understood that the provision had the effecting of vesting certain, high-ranking OPSO employees with guaranteed, public employment terminable only for cause.

In September 2017, Captain Short alleges that either Sheriff Gusman or Director Maynard ordered an agency-wide employment drug screen, and that the drug test not only violated Louisiana's Employee Drug Testing Law (hereinafter "LEDTL"), codified at *La. Rev. Stat. Ann.* § 49:1001 *et seq.*,[9] but was a complete botch, ultimately producing a false positive indicating that Captain Short had consumed oxycodone.  Captain Short alleges the false positive was almost certainly due to what were objectively substandard and illegal collection practices that either resulted in the specimen becoming contaminated or simply misattributed to Captain Short through negligent clerical error.  Captain Short alleges it is factually impossible that the drug screen accurately reported positive for oxycodone because Captain Short had not consumed any oxycodone.

Based on the botched test results, Director Maynard or Sheriff Gusman summarily terminated Captain Short's employment without first notifying him or giving him a pre-termination opportunity to be heard.  Rather, Director Maynard or Sheriff Gusman notified Captain Short of his termination by letter sent to his home.  Captain Short attempted to appeal

---

[9] The Louisiana legislature did not provide a short title for Section 49:1001 *et seq.*  For clarity and ease of reading, undersigned counsel uses the name "Louisiana Employee Drug Testing Law" or LEDTL.

the decision, but to date he has never had the opportunity to be heard by any OPSO decision maker.

Finally, multiple OPSO officials falsely reported to outside law enforcement agencies that Captain Short tested positive for cocaine and methamphetamine and was terminated for that reason.  As set forth in his Amended Complaint, the allegation that Captain Short tested positive for oxycodone, cocaine, or methamphetamine was false, publicized, and stigmatizing such that Captain Short's career in law enforcement is ruined.  In fact, as of the time of this filing, which is more than one year after his unlawful termination, Captain Short has not found re-employment with any law enforcement agency.

### III.    LAW AND ARGUMENT

Based on Captain Short's well-pleaded allegations in this case and the controlling law of this circuit, the defendants' motions to dismiss should be denied.  The defendants are not entitled to any immunity, and Captain Short states claims for relief clearly authorized under existing law. For clarity's sake, Captain Short addresses the Directors' claims of sovereign immunity first, followed by their claims of absolute and quasi-judicial immunity, then finally the defendants' remaining arguments together.

**A.    The Directors Are Not Entitled to Derivative Federal Sovereign Immunity Because They Are Independent Contractors Who, as Alleged, Violated both Federal Law and the Express Terms of the Stipulated Order**

The Directors assert that they are, in fact, federal officers entitled to federal sovereign immunity against Captain Short's suit (at least in their official capacities – Director Maynard concedes that sovereign immunity cannot protect him in his individual capacity).  *See* Directors' Memorandum in Support, Rec. No. 37-1 at 11-12.  Captain Short disputes this, but even assuming they are, three objective facts eliminate the Directors' defense.  First, the express terms

of the Stipulated Order make clear that the office of Compliance Director is not that of a federal employee or federal officer, but an "independent contractor," albeit one charged with essentially running the Orleans Justice Center, and albeit one who, by agreement, reports not to Sheriff Gusman but to the *Jones* court.[10]   Second, the United States government itself was a party and signatory to the negotiated, contractual settlement agreement that is the Stipulated Order.[11]   Third, Captain Short alleges in his Amended Complaint – which, at this stage of the proceeding, must be taken as true – that Director Maynard exceeded the express scope of his authority under the Stipulated Order by terminating Captain Short's employment without cause.

It is axiomatic that "sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, (1994).   But the Supreme Court just two years ago held that federal contractor status by itself "does not entitle [the contractor] to 'derivative sovereign immunity,' i.e., the blanket immunity enjoyed by the sovereign."  *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 666, __ U.S. __ (2016).   Further, even if the contractor could otherwise claim derivative immunity, a contractor loses any claim to derivative immunity when he violates federal law along with the instructions of the federal government.  *Id.* at 672.[12]

The facts of *Gomez* are fairly straightforward.  Plaintiff Gomez sued the Campbell-Ewald

---

[10] Stipulated Order at 4 ¶ (A)(4).

[11] Stipulated Order at 17.

[12] Unlike actual sovereign immunity, which is broadly construed in favor of the federal government, federal courts have only endorsed derivative immunity for contractors in certain contexts, such as procurement of military equipment, *see, e.g.*, *Boyle v. United Techs. Corp.*, 487 U.S. 500, or more generally when the contract in question was "validly conferred, that is, if what was done was within the constitutional power of Congress [to be ordered]."  *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943).  Thus, even if this Court disagrees with Captain Short's argument regarding the application of *Gomez* to the Directors' claims in this case, the Directors still have not articulated a specific case or argument that confers on them sovereign immunity as private citizens who are merely "analogous" to a court-appointed receiver in a prison-reform litigation.

company under the federal Telephone Consumer Protection Act[13] after Campbell sent him an unsolicited text message advertising recruitment opportunities with the U.S. Navy. *Gomez*, 136 S.Ct. at 667-68. Campbell had contracted with the U.S. Navy to send the text messages, and Campbell filed a motion to dismiss Gomez's suit under Federal Rule 12(b)(1) asserting federal sovereign immunity as the Navy's contractor. The district court sided with Campbell, but the Ninth Circuit reversed. On appeal, the Supreme Court affirmed the Ninth Circuit and held a contractor is not entitled to the federal government's "unqualified" immunity merely because of its contractor status, and that a contractor loses any particularly conferred immunity when its conduct violates both federal law and the instructions of the United States. *Id.* at 672.

Specifically in the context of the Rule 12(b)(1) proceeding, the Supreme Court found that Gomez had alleged that Campbell violated federal law (i.e., the TCPA) as well as the Navy's instructions because the Navy had directed Campbell to conduct its operations in accordance with federal law. *Id.* at 673-674. Accordingly, the Supreme Court held that Campbell lost any claim to derivative immunity:

> Campbell asserts "derivative sovereign immunity," but can offer no authority for the notion that private persons performing Government work acquire the Government's embracive immunity. When a contractor violates both federal law and the Government's explicit instructions, as here alleged, no "derivative immunity" shields the contractor from suit by persons adversely affected by the violation.

*Id.* at 672.

The procedural posture of this case and Captain Short's well-pleaded allegations fall neatly within the holding of *Gomez*. First, regardless of whether the Directors should be construed as "officers" of the *Jones* court for any other reason, the Stipulated Order makes clear

---

[13]The TCPA forbids sending certain unsolicited text messages to others. *See* 47 U.S.C. § 227 *et seq.*

that the position of Compliance Director is not that of a *federal employee* or *federal agent* but merely an independent contractor.  Indeed, the **actual United States government** was a signatory to the Stipulated Order.  The **actual United States government** negotiated the provision defining the Compliance Director position as an independent contractor.  The **actual United States government** forbade the Compliance Director from terminating any OPSO employees with the rank of Captain or higher without cause.

Thus, what the Directors claim here is not actual sovereign immunity possessed by "the Federal Government and its agencies," *see Meyer*, *supra*, but merely so-called derivative immunity based on what the Directors argue is their contractor relationship to the *Jones* court. But even if that were so (and the facts strongly tack against it), Captain Short has alleged in this 12(b)(1) proceeding that he was terminated without cause, and therefore that the Directors' termination decision violated both federal law (Section 1983 through the 14th Amendment's due process clause) and the federal government's instructions, as expressly ratified in the Stipulated Order, forbidding the Directors from terminating any OPSO employee with the rank of Captain or higher without cause.  In line with the Supreme Court's holding in *Gomez*, even if the Directors are, indeed, contractors working for the federal government through the *Jones* court, their claim for sovereign immunity should be denied based on the objective facts and well-pleaded allegations of the case.[14]

---

[14] Separate and apart, it bears mentioning that the Directors have cited only one case for their sweeping proposition that they, as independent contractors in a prison-reform litigation case, should be entitled to federal sovereign immunity: *Danos v. Jones*, 652 F.3d 577 (5th Cir. 2011).  But *Danos* merely holds that a plaintiff's suit against the Fifth Circuit Judicial Council and its active, sitting judges, in their official capacities, based on alleged damages caused by the Council's official rulings, was barred in part by sovereign immunity.  The facts of *Danos* are simply inapplicable here.  Indeed, prison-reform litigation is not new, and as best as Captain Short can tell, no federal court has ever held that a bona-fide court-appointed receiver is entitled to assert federal sovereign immunity or Eleventh Amendment sovereign immunity in

**B.**     **Directors Maynard and Hodge Are Not Entitled to Absolute Judicial Immunity Because They Are Not Officers of the *Jones* Court**

As an introductory point, the issue of whether the Directors are or are not "officers" of the *Jones* court is somewhat academic in this case because, as the Supreme Court has consistently ruled, whether a defendant may claim judicial immunity and quasi-judicial immunity turns on "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988).  Thus, in *Forrester* (which is more fully briefed *infra*), the Supreme Court held that a sitting judge was not entitled to absolute judicial immunity in a wrongful termination case because the judge's decision at issue was "administrative" rather than "judicial" in nature. *Id.* at 228 (holding that absolute immunity does not apply to a judge's "[a]dministrative decisions, even though they may be essential to the very functioning of the courts").  Based on *Forrester* and its reasoning, the Fifth Circuit has previously developed a list of factors used to determine whether an act is judicial in nature and entitled to absolute immunity.  *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997) (so holding).

That said, to successfully claim absolute *judicial* immunity, the defendant must first prove that he or she is either a judge or one of their "officers," such as their receivers. *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) (so holding).  In their supporting memorandum, the Directors concede that they are not court-appointed receivers, but are, at most, "analogous to a court-appointed receiver."[15]  In any event, Captain Short argues the most basic view of the matter, specifically that the Directors are simply what the Stipulated Order expressly says that they are: independent contractors appointed by Sheriff Gusman to administer the Orleans Parish

---

a case like this.

[15] Directors' Memorandum in Support, Rec. No. 37-1 at 7.

Justice Center per the terms of the parties' negotiated settlement, as reflected in the Stipulated Order, later ratified by the *Jones* court.  And while the Directors frequently refer to themselves as "appointed" by the *Jones* court, they make no substantive argument for why this is so, and they do not respond to the September 15, 2016 order of the *Jones* court that specifically "approved" Sheriff Gusman's "appointment" of Director Maynard.

Judge Vance more or less embraced this view when she recently ruled that Director Hodge could not avail himself of the so-called "federal officer removal statute" in a state court lawsuit against him in his official capacity as Compliance Director, because in his official capacity he was not an "officer of the courts of the United States" but was the place-holder defendant for the real party in interest in the lawsuit, the Orleans Parish Sheriff's Office.  *See Mid-City Neighborhood Org. v. Gusman*, EDLA No. 18-cv-3705 (October 8, 2018), Rec. No. 22 (so holding).

In contrast, the Directors cite three other older decisions (decided before Judge Vance's opinion in *Mid-City*) from Louisiana federal district courts finding that the Compliance Director is either an "officer" of the *Jones* court or the functional equivalent of a court-appointed receiver. First, in *Jones*, Magistrate Judge North found that the compliance director is an officer of the *Jones* court or otherwise acts as the functional equivalent of a court-appointed receiver.  *See Jones*, Rec. No. 1199.  The *Jones* court later adopted Judge North's report and recommendation. Judge North held, however, that any claim by the Directors for judicial immunity "has its limits and . . . is properly determined by the judge presiding in that case."  Rec. No. 1199 at 4. Meanwhile, Judge Dick of the Middle District held similarly to Judge North and did find, based on the facts of her case, that the Directors were entitled to judicial immunity against the tort claims brought by prisoner plaintiffs.  *See Crittindon v. Gusman*, MDLA Case No. 17-cv-512,

Rec. No. 78.   Finally, Judge Lemelle of the Eastern District essentially held the same in *Crawford v. Gusman*, Case No. 17-cv-13397, Rec. No. 48, holding that the Directors were immune against wrongful death claims brought by the family of a deceased prisoner.

As best as Captain Short is aware, the Fifth Circuit has not yet ruled on this issue, and there appears to be a district-court split regarding whether the office of Compliance Director is or is not an "officer" of the *Jones* court.   However, even if the Directors are "officers" of the *Jones* court, their claims for both absolute judicial and quasi-judicial immunity fail because the decision at issue in this case – Director Maynard's decision to terminate Captain Short – was clearly "administrative" in nature, not "judicial" or "adjudicatory," and therefore immunity does not attach as a matter of law.

**C.** **The Directors and Sheriff Gusman Are Not Entitled to Quasi-Judicial Immunity or Qualified Immunity In Their Official Capacities as Governmental Defendants**

As a threshold matter, the majority of Captain Short's claims in this case are against Sheriff Gusman, Director Maynard, and Director Hodge in their official capacities.   In turn, the Directors argue that they are entitled to absolute judicial immunity, absolute quasi-judicial immunity, or qualified immunity.   Sheriff Gusman also argues he is entitled to qualified immunity.   The Fifth Circuit recognizes "quasi-judicial immunity" as a subset of judicial immunity that immunizes "agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court." *O'Neal*, 113 F.3d at 65 (5th Cir. 1997).   Qualified immunity is a well-known concept that immunizes a governmental official from personal liability "based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002).

Bluntly put, none of the defendants, in their official capacities, have immunity defenses

in this Section 1983 case as a matter of law.  The dispositive issue is that Captain Short sued Sheriff Gusman in his official capacity, and Directors Maynard and Hodge in their official capacities as appointees of Sheriff Gusman (which the Supreme Court has recognized is simply another way of asserting liability against a governmental entity – in this case, the office of Sheriff Gusman).  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity).  Essentially, by suing the defendants in their official capacities, Captain Short is asserting liability against the political subdivision of Sheriff's Gusman's office.  *See Hebert v. Maxwell*, CV-03-1739-A, 2005 WL 2429174 at *4 (W.D. La. Sept. 30, 2005) (noting that "a suit against a sheriff is . . . a suit against a political subdivision, the sheriff's office").[16]

Here, this distinction between "official-capacity" and "individual-capacity" suits is critically important because the Supreme Court and Fifth Circuit squarely hold that a defendant sued in his official governmental capacity has no absolute or qualified immunity defense. *Kentucky*, 473 U.S. at 167 (1985) (holding in Section 1983 actions that "an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as . . . absolute immunity . . . [and] qualified immunity . . . [but] [i]n an official-capacity action, these defenses are unavailable") (internal citations and formatting omitted); *accord Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). (holding "a § 1983 suit naming defendants only in their 'official capacity' does not involve

---

[16] Under Louisiana law, because the office of Sheriff is only a political subdivision, "the elected Sheriff is not an arm of the state and is not entitled to Eleventh Amendment immunity from suit in federal court." *Cozzo*, 279 F.3d at 283 (5th Cir. 2002).  Ultimately, from a financial perspective, this means that Captain Short seeks to recover any money judgment in this case not from the Directors personally but from the office of Sheriff Gusman or its insurance (if any).

personal liability to the individual defendant . . . [and] defenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official-capacity suits").[17]

**D.     Director Maynard Is Not Entitled to Absolute or Quasi-Judicial Immunity Because His Decision to Terminate Captain Short Was Administrative Not Adjudicative**

In this case, Captain Short sued only one defendant in his individual capacity – Director Maynard.  Director Maynard asserts quasi-judicial immunity, but that defense should be denied because Mr. Maynard's decision to terminate Captain Short was administrative not adjudicative.

1.     An Official Is Only Entitled to Quasi-Judicial Immunity for Adjudicatory Acts, Not Administrative Ones

The Fifth Circuit holds that quasi-judicial immunity "attaches to particular official functions, not to particular offices." *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997).  In other words, "the proper focus should not be the identity of the party claiming the immunity, but rather his 'role in the context of the case.'"  *Id.* (quoting *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir.1996)).  The *O'Neal* court adopted a six-factor analysis first articulated by the Supreme Court to determine whether an official's act is adjudicative in nature, rather than administrative, and thus entitled to quasi-judicial immunity:

1.     the need to assure that the individual can perform his functions without harassment or intimidation;

2.     the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

---

[17]While asserting a Section 1983 claim against a defendant in his official governmental capacity has certain other implications throughout a case, none of the defendants in their motions to dismiss or supporting memoranda address these issues or ask the Court to dismiss Captain Short's claims on such grounds; and, accordingly, any such argument regarding Captain Short's decision to sue the defendants in their official capacities should be considered waived for purposes of this Rule 12 proceeding.

3.      insulation from political influence;

4.      the importance of precedent;

5.      the adversary nature of the process; and

6.      the correctability of error on appeal.

*Id.* (citing *Cleavinger v. Saxner,* 474 U.S. 193, 202 (1985)).  These factors are "characteristic" of judicial acts, but "no one factor is controlling and the list of considerations is not intended to be exclusive."   *Id.*   In Section 1983 cases involving a governmental defendant who imposes discipline on the plaintiff, the decisional law, discussed below, indicates the most important factor in the quasi-judicial immunity analysis is whether the plaintiff is afforded procedural safeguards before the discipline is imposed.  *See, e.g., O'Neal, infra*.

2.      Adjudicatory Acts Afford Procedural Safeguards

On one end of the spectrum, for instance, the Fifth Circuit has applied these factors and afforded quasi-judicial immunity to state adjudicatory boards who discipline their members after a contradictory hearing.  *See O'Neal*, 113 F.3d at 65-67.  In *O'Neal*, a nurse licensed by the Mississippi Board of Nursing brought a Section 1983 case against the board's members after they voted to revoke her license "following adjudicatory hearings."  *Id.* at 64.  The Fifth Circuit made short shrift of the nurse's claims, because the Fifth Circuit observed that in all respects the Nursing Board essentially acted as a court – nurses were afforded counsel, the board compelled the attendance of witnesses and allowed for cross-examination, made findings of fact and issued punishments based on those findings, and the board's decision was subject to appeal:

> The Board's functions are judicial in nature and its members' role comparable to that of a judge. The Board and its members administer oaths, compel the attendance of witnesses, allow parties to present the testimony of witnesses as well as cross-examine witnesses who testify against them, permit parties to be represented by counsel, and most importantly make findings of fact and assess punishments or accolades in accordance with these findings. The board director

14

and its members were acting in their "quasi-judicial", i.e. adjudicatory, capacity
when they revoked the plaintiffs' licenses.

*Id.* at 66.  Of all these characteristics, however, the Fifth Circuit noted that the most important

consideration was whether the plaintiff was afforded "procedural safeguards," such as "the right

to counsel, adequate notice of a hearing, and the opportunity to present and cross-examine

witnesses[.]"  *Id.*  In *O'Neal*, the nurse was afforded ample procedural protection and notice and

therefore quasi-judicial immunity attached.

At the other end of the spectrum, the Supreme Court has denied quasi-judicial immunity

to a prison disciplinary committee based on its factors above.  *Cleavinger v. Saxner*, 474 U.S.

193, 196 (1985).  In *Cleavinger*, prison officials charged an inmate with encouraging a work

stoppage, then convened a non-adversarial hearing on the matter and punished the inmate, who

then sued the hearing officers under Section 1983.  *Id.*  The Supreme Court denied the hearing

officer's claim of quasi-judicial immunity because the "hearing" contained no procedural

safeguards and was not adjudicative in nature:

> Under the Bureau's disciplinary policy in effect at the time of respondents'
> hearings, few . . . procedural safeguards . . . were present. The prisoner was to be
> afforded neither a lawyer nor an independent nonstaff representative. There was
> no right to compel the attendance of witnesses or to cross-examine. There was no
> right to discovery. There was no cognizable burden of proof. No verbatim
> transcript was afforded. Information presented often was hearsay or self-serving.
> The committee members were not truly independent. In sum, the members had no
> identification with the judicial process of the kind and depth that has occasioned
> absolute immunity.

*Id.* at 206.  Because the plaintiff was not afforded any procedural safeguards prior to discipline,

the Supreme Court held the process was not adjudicatory and thus not protected by quasi-judicial

immunity.

The distinction between administrative and adjudicatory acts is so critical to the issue of

absolute immunity that, even when a bona fide judge acts in an administrative rather than an

adjudicative capacity, the Supreme Court refuses to extend him absolute immunity for his decision to terminate an employee.[18]  *Forrester v. White*, 484 U.S. 219, 221 (1988).   In *Forrester*, an Illinois state-court judge was authorized under law to hire and fire probation officers, and the judge exercised his discretion to demote and terminate such an officer, who then sued the judge under Section 1983.  *Id.* at 221.  The judge invoked absolute immunity, but the Supreme Court rejected the defense, holding that a judge who makes administrative decisions is simply not entitled to absolute immunity:

> In the case before us, we think it clear that Judge White was acting in an administrative capacity when he demoted and discharged Forrester . . . .   The decisions at issue . . . were not themselves judicial or adjudicative . . . .   Such decisions, like personnel decisions made by judges, are often crucial to the efficient operation of public institutions (some of which are at least as important as the courts), yet no one suggests that they give rise to absolute immunity from liability in damages under § 1983 . . . .   To conclude that, because a judge acts within the scope of his authority, such employment decisions are brought within the court's "jurisdiction," or converted into "judicial acts," would lift form above substance.

*Id.* at 229.

3.      The Case Law Cited By The Directors Is Unpersuasive

In their lengthy discussion of immunity, the Directors omit any citation to *O'Neal*, *Cleavinger*, or *Forrester*, which misses the mark in any discussion on absolute or quasi-judicial immunity in the Fifth Circuit.  Instead, the Directors place great emphasis on a series of Ninth Circuit decisions holding that court-appointed receivers (which the Directors admit they are not) are entitled to absolute immunity for many of their discretionary acts in prison reform litigation. Most unhelpfully, the Directors place the bulk of their argument that Director Maynard's termination decision was adjudicative not administrative, on the D.C. district court's decision in

---

[18] For purposes of this discussion regarding the differences between adjudicatory versus administrative acts, the defenses of judicial and quasi-judicial immunity are identical.

*Fantasia v. Office of Receiver of Comm'n on Mental Health Servs.*, CIV.A. 01-1079-LFO, 2001 WL 34800013, at *3 (D.D.C. Dec. 21, 2001).

*Fantasia* is factually and legally unpersuasive to the Directors' claim of quasi-judicial immunity for two reasons.  First, the defendant in *Fantasia* was a bona-fide court-appointed receiver, and the *Fantasia* opinion frequently moves between concepts of absolute judicial immunity, inapplicable to the Directors because they are not receivers, and quasi-judicial immunity.  It is unlikely that the *Fantasia* decision would have been the same had the receiver at issue been what the Directors are here – independent contractors nominated, appointed, and salaried by Sheriff Gusman.  Indeed, in that same case, the *Fantasia* court denied quasi-judicial immunity to two other defendants who were agents of the defendant-receiver, because their "more attenuated relationship with the court [provides] a less compelling claim of quasi-judicial immunity." *Fantasia*, 2001 WL 34800013, at 4.

Second, and more importantly here, the *Fantasia* court did not analyze the receiver's decision to terminate the plaintiff's employment in the context of the *O'Neal/Cleavinger* factors above.  Particularly, the *Fantasia* court did not address whether the terminated plaintiff-employee was afforded procedural safeguards such that the termination process was more adjudicatory than administrative.  Instead, and contrary to the Supreme Court's decision in *Forrester*, the *Fantasia* court inexplicably held that a receiver who terminates an employee *per se* performs an adjudicative act rather than an administrative one.  These differences in the facts and law compared to Captain Short's case make *Fantasia* unpersuasive under Fifth Circuit precedent.

As a final note, the Directors rely heavily on *Fantasia* but fail to draw this Court's attention to multiple other D.C. district court decisions more closely aligned on the facts and law

to this case, and holding, for instance, that a "Transportation Administrator" appointed by consent decree to operate Washington D.C.'s Division of Transportation (essentially identical to the Compliance Director in our case) is not entitled to absolute or quasi-judicial immunity at the 12(b)(6) stage in Title VII employment litigation; *Saint-Jean v. D.C.*, 74 F.Supp.3d 274, 282-83 (D.D.C. 2014) (so holding); *and also Mintz v. District of Columbia,* CIV No. 00–0539 (LFO), 2006 WL 1518954, at \*2 (D.D.C. May 5, 2006) (rejecting the receiver's claim of absolute immunity because "even judges are subject to discrimination suits, because discriminatory acts are not judicial acts" (citing *Forrester*, 484 U.S. 219 (1988)).

4.    Based On The O'Neal/Cleavinger Factors, Director Maynard Is Not Entitled to Quasi-Judicial Immunity Because His Decision to Terminate Captain Short Was Administrative Not Adjudicative

Applying the *O'Neal/Cleavinger* factors to Director Maynard's decision to terminate Captain Short, particularly in light of the relevant decisional law, quickly leads to the conclusion that Director Maynard is not entitled to quasi-judicial immunity because his act was administrative, not adjudicative.

First, Director Maynard acted not as an objective adjudicator "comparable to a judge," but as the appointee of Captain Short's employer, Sheriff Gusman. It should be noted that Sheriff Gusman filed two separate motions to dismiss in this matter, and in neither did he assert that he, as Captain Short's employer, was entitled to quasi-judicial immunity for his (alternatively pled) decision to terminate Captain Short. Because Director Maynard was appointed by Sheriff Gusman and vested with his employment authority, Director Maynard can have no greater immunity than Sheriff Gusman himself.

Second, Director Maynard's decision did not afford Captain Short any procedural safeguards prior to termination – despite the fact that Director Maynard himself enacted Policy

301.23, which specifically required Director Maynard to give Captain Short both a pre-termination adjudicatory hearing and post-termination appeal hearing.   Indeed, as alleged, Director Maynard did not give Captain Short any notice at all prior to termination.   Instead, Director Maynard informed Captain Short he was terminated via a letter sent to his home. Captain Short had no opportunity to appeal or for post-termination review.   Presently, Director Maynard asks this Court to essentially strip Captain Short of any post-termination review whatsoever by dismissing this lawsuit.

Director Maynard's decision not only violated Director Maynard's own, internal OPSO policies, but presents essentially the exact same fact-pattern as in the Supreme Court's decision in *Cleavinger*.   Captain Short –

> was to be afforded neither a lawyer nor an independent nonstaff representative. There was no right to compel the attendance of witnesses or to cross-examine. There was no right to discovery. There was no cognizable burden of proof. No verbatim transcript was afforded. Information presented often was hearsay or self-serving. [Director Maynard was] not truly independent. In sum, [Director Maynard] had no identification with the judicial process of the kind and depth that has occasioned absolute immunity.

*Cleavinger*, 474 U.S. at 196.

Alternatively, applying each of the *O'Neal*/*Cleavinger* factors one at a time leads to the same result.   Director Maynard's termination decision was not subject to correction on appeal because there was no appeal.   The decision-making process was not adversarial.   There were no safeguards in place to minimize damages and control unconstitutional conduct.   There is no suggestion that Director Maynard's decisions form any continuing precedent.   The only factor that is arguably in favor of the Director's claim for quasi-judicial immunity is that he must be free from intimidation or harassment, yet any governmental employer could make the same argument, and indeed the state judge in *Forrester* argued precisely that, which the Supreme

Court rejected.

Because Director Maynard's decision was administrative and not adjudicative, he should not be entitled to quasi-judicial immunity for terminating Captain Short.

**E.   Captain Short Properly States a Cause of Action for Wrongful Termination Without Due Process Under the 14th Amendment, and Director Maynard Is Not Entitled to Qualified Immunity Because His Conduct Violated Clearly Established Constitutional Law**

The defendants all move to dismiss Captain Short's cause of action for deprivation of his 14th Amendment right to continued employment, without due process of law.  In the alternative, Director Maynard asserts that even if Captain Short does have such a cause of action, Director Maynard is entitled to qualified immunity. Because Director Maynard's claim for qualified immunity is intertwined with whether or not Captain Short does have a cause of action for deprivation of his 14th Amendment property interest, the two concepts are discussed together below.

Importantly, the defendants **do not** move to dismiss Captain Short's cause of action for deprivation of his 14th Amendment liberty interest to earn a living; and, thus this cause of action must survive the defendants' motion to dismiss.[19]

1.   A Public Employer Must Give Pre-Termination Notice and Opportunity to Be Heard to an Employee Who Is Terminable Only for Cause

Qualified immunity shields a governmental defendant from personal liability for his

---

[19] The Supreme Court holds that the government must afford "notice and an opportunity to be heard" to anyone whose "good name, reputation, honor, or integrity" are at stake.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).  In the Fifth Circuit, a public-employee plaintiff pleads a prima facie case for the denial of this "liberty interest" to earn a living without due process by asserting the basis for termination was "(i) false, (ii) publicized, and (iii) stigmatizing to his standing reputation in his community," or was "(i) false and (ii) had a stigmatizing effect such that (iii) he was denied other employment opportunities as a result." *Whiting v. Univ. of S. Mississippi*, 451 F.3d 339, 347 (5th Cir. 2006).  Although the Directors don't assert qualified immunity against this claim, Captain Short's well-pleaded complaint clearly satisfies the prima facie pleading requirements.

discretionary actions unless the defendant's conduct was objectively unreasonable. *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). Whether the act was objectively unreasonable resolves under a two-party inquiry: has the plaintiff "alleged a violation of a clearly established right and, if so, whether the defendant's conduct was objectively unreasonable." *Id.*

In its landmark decision, *Cleveland Bd. of Educ. v. Loudermill*, the Supreme Court considered "what pretermination process must be accorded a public employee who can be discharged only for cause." *Loudermill*, 470 U.S. 532, 535 (1985). The Supreme Court squarely held that a "pretermination hearing" before a decision-maker is required, although the nature of the hearing need not be elaborate or formal. *Id.* at 545. In this case, Captain Short alleges he was given no notice at all before his termination, no pre-termination hearing (elaborate, informal, or otherwise), and no post-termination hearing. Thus, both Captain Short's cause of action and Director Maynard's qualified-immunity defense hinge on whether Captain Short was terminable only for cause at the time he was terminated. If so, then Captain Short's claim survives dismissal, and Director Maynard is not entitled to immunity because his termination decision was objectively unreasonable in light of more than thirty years of settled constitutional law.

2.     Whether an Employee Is Only Terminable for Cause Is a Matter of Contract

The Louisiana Supreme Court succinctly holds that "[t]he employer-employee relationship is a contractual relationship." *Quebedeaux v. Dow Chem. Co.*, 2001-2297, 4 (La. 6/21/02), 820 So. 2d 542, 545. So-called "at-will" employment is "merely a gap-filler, a judicially created presumption utilized when parties to an employment contract are silent as to duration." *Id.* Even if employment is otherwise "at-will," the parties may create "contractual exceptions" to the doctrine. *Mix v. Univ. of New Orleans*, 609 So. 2d 958, 961 (La. Ct. App. 1992).

Likewise, under Louisiana law, a consent decree is a "bilateral contract which is voluntarily signed by the parties and accepted by the court." *Gulledge v. Gulledge*, 32,561, 3 (La. App. 2 Cir. 8/18/99), 738 So.2d 1229, 1230.  The same is true under federal common law. *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986) (holding "it is the agreement of the parties . . . that creates the obligations embodied in a consent decree").  Stipulated orders are treated identically to consent decrees regardless of the particular caption used.  *See Chisolm ex rel. CC v. Greenstein*, 876 F.Supp.2d 709, 716 (E.D. La. 2012) (Barbier, J.) (interpreting "Stipulations and Orders" between the parties identically to consent decrees for purposes of contractual obligations).  Importantly, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."  *Id.* (quoting *United States v. Armour & Co.,* 402 U.S. 673, 681–82 (1971).

3.      Under the Stipulated Order, Captain Short Was Only Terminable for Cause, and Director Maynard Owed Him a Pre-Termination Hearing

In the Stipulated Order, Sheriff Gusman contractually agreed to divest himself of termination authority over his employees.  Sheriff Gusman agreed to vest that authority in a Compliance Director for at least a nine-month term.  Sheriff Gusman agreed that the Compliance Director could only terminate Captain Short for the following causes:  "termination of employment will be for misconduct, failing to satisfy job expectations, financial prudence, operational efficiency, or inhibiting progress toward Consent Judgment compliance."

The Directors vigorously argue that Sheriff Gusman's contractually binding agreement protecting Captain Short from at-will termination does not mean that he is terminable only for cause.  That is illogical.  The Stipulated Order must be "discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."  *Greenstein*, 876

F.Supp.2d at 716.  From the moment he entered into the Stipulated Order, Sheriff Gusman agreed that Captain Short was not terminable except for five expressly defined causes.  The Supreme Court has squarely held that a public employee who is only terminable for cause must be given a pre-termination hearing.  Under clearly established constitutional law, Director Maynard owed Captain Short either a pre-termination or post-termination hearing. Director Maynard's failure was objectively unreasonable based on the clearly worded and express language of the Stipulated Order, and thus his claim for qualified immunity must fail.

**F.     Under the Relevant Decisional Law, the LEDTL Provides a Cause of Action for Wrongful Termination**

Finally, both Sheriff Gusman and the Directors argue that even if the defendants unlawfully conducted the drug test at issue, the Louisiana Employee Drug Testing Law ("LEDTL") does not provide an independent cause of action for damages.  But the only Louisiana court to address this question held that the LEDTL does provide a cause of action for damages.  *See Sanchez v. Georgia Gulf Corp.*, 2002-1617, 13 (La. App. 1 Cir. 8/13/03), 853 So .2d 697, 706 (so providing) (hereinafter "*Sanchez I*").

By way of background, the LEDTL was enacted in 1990 "to protect individual constitutional rights."  *Id.* at 5, 701.  The LEDTL requires that employers perform all testing pursuant to federal drug testing standards as published in the federal register; that specimens be collected by a person certified and trained in the procedure; and that specimens be collected and transported utilizing certain chains of custody, etc.  *Id.*  Relevant here, plaintiff Sanchez was terminated after allegedly failing a workplace drug screen that was conducted in violation of the LEDTL.  Plaintiff Sanchez sued his employer for damages, and the district court granted Mr. Sanchez summary judgment on the issue of liability.  *Id.* at 8, 703.  The employer appealed, and the *Sanchez I* panel affirmed the summary judgment in favor of Mr. Sanchez, holding as a matter

of first impression that the LEDTL did, in fact, provide a wrongfully terminated employee with a

cause of action for money damages against his employer:

> Although [the LEDTL] does not prescribe the specific result that will follow from
> non-compliance, we conclude that failure to comply with the provisions of this
> statute would defeat the purpose of the drug-testing statute . . . thus, these
> requirements are mandatory [and] . . . we find no error in the trial court's granting
> of Sanchez's motion for summary judgment[.]

*Sanchez I* at 12–13, 705-06.

The employer appealed to the Louisiana Supreme Court, which remanded the case back

to the First Circuit to "to address the relationship between the [LEDTL] and the employment at

will doctrine."   *Sanchez v. Georgia Gulf Corp.,* 02–2198 (La. 11/27/02), 836 So.2d 9.   On

remand, a 3-2 divided panel held that the LEDTL does not provide an "at-will" employee with a

cause of action against his employer (presumably because the employer could have terminated

the employee at any time without cause).   *Sanchez v. Georgia Gulf Corp*., 2002-0904, 9 (La.

App. 1 Cir. 11/12/03), 860 So. 2d 277, 89 (hereinafter *Sanchez II*).   The Louisiana Supreme

Court later denied writs on appeal from *Sanchez II.*

Upon review, this appears to be the extent of Louisiana case law addressing this issue.

However, prior to the decision in *Sanchez II*, the Louisiana Attorney General issued a formal

opinion specifically opining that even an at-will employee maintains a wrongful termination

cause of action against his employer for violating the LEDTL.   Op. Atty. Gen., No. 99-100-A,

August 30, 1999 (so opining).   To date, the Louisiana Supreme Court has not directly settled the

issue.

Here, the defendants' argument that the LEDTL does not provide Captain Short with a

cause of action for wrongful termination is not supported by case law, because the only court that

has ever addressed the issue – *Sanchez I* – specifically held the opposite.   On remand, *Sanchez II*

24

held that an at-will employee lacks a cause of action because his employer could terminate him at any time for any reason regardless.   Thus, at present, the state of law in Louisiana, at least in one of its circuits, is that employees who are only terminable for cause do have a cause of action for wrongful termination under the LEDTL, while their at-will peers do not.   Recently, the Middle District of Louisiana recognized this implicit distinction.   *See Tilson v. DISA, Inc.*, CV 17-240, 2018 WL 3132607, at *3 (M.D. La. June 26, 2018) (holding that "while an employer may find shelter from the [LEDTL] under the employment at will doctrine," others may not).

As discussed throughout this opposition, Captain Short alleges in his complaint that at the time of his termination he was terminable only for cause.   Accordingly, even assuming that *Sanchez II* is controlling on this issue, Director Maynard is liable under Louisiana law for terminating Captain Short in violation of the LEDTL.

## G.   Captain Short May Maintain His Cause of Action for Injunctive Relief Against Director Hodge as a Matter Of Law

As an ancillary matter, the Directors argue that Captain Short should not be allowed to maintain his cause of action for injunctive relief (e.g., reinstatement) against Director Hodge. This argument presumes that none of Captain Short's substantive causes of action survive this motion to dismiss.   Assuming they do, however, then Captain Short is allowed to seek injunctive relief against the current Compliance Director in the form of reinstatement.

WHEREFORE, plaintiff William D. Short respectfully opposes the *Motion to Dismiss* filed by defendants Darnley Hodge and Gary Maynard (Rec. No. 37) and Sheriff Gusman (Rec. No. 38).

Respectfully submitted:

/s/ Kevin S. Vogeltanz
_____
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email: vogeltanz@gmail.com

*Counsel for plaintiff William D. Short*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, December 11, 2018, a copy of the above and foregoing opposition has been served upon all counsel of record via either (1) each attorney's professional e-mail address; (2) facsimile; or (3) by filing online via the Court's CM/ECF system.

/s/ Kevin S. Vogeltanz
_____