UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILLIAM D. SHORT                                   CIVIL ACTION

VERSUS                                             NO: 18-3174

SHERIFF MARLIN GUSMAN,                             SECTION: "J"(3)
GARY D. MAYNARD, and
DARNLEY R. HODGE, SR.

## ORDER AND REASONS

Before the Court are two *Motions to Dismiss* (Rec. Docs. 37, 38) pursuant to

Rules 12(b)(1) and 12(b)(6) filed by Defendants, Sheriff Marlin Gusman, Gary D.

Maynard, and Darnley R. Hodge, Sr. Plaintiff, William D. Short, opposes both

motions (Rec. Doc. 41). Defendants filed replies (Rec. Docs. 44, 47). Having considered

the motions and legal memoranda, the record, and the applicable law, the Court finds

that the motions should be **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

This litigation arises out of Plaintiff's termination from his position with the

Orleans Parish Sheriff's Office for allegedly reporting late to a random drug screening

and having his urine test positive for oxycodone, a controlled substance, without

having a prescription for the drug. Following his termination on September 22, 2017,

Plaintiff filed the instant action against Sheriff Marlin Gusman ("Sheriff Gusman")

and former court-appointed Compliance Director Gary D. Maynard ("Maynard"),

alleging unlawful termination under the Fourteenth Amendment through 42 U.S.C.

§ 1983 and pursuant to the Louisiana Employee Drug Testing Law. Plaintiff also seeks injunctive relief against Sheriff Gusman and the current Compliance Director, Darnley R. Hodge, Sr. ("Hodge"), to reinstate Plaintiff's employment as a captain with the Orleans Parish Sheriff's Office.

## LEGAL STANDARD

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com*, Inc., 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir.2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02–3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). If a court lacks subject matter jurisdiction, it should dismiss without prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## PARTIES' ARGUMENTS AND DISCUSSION

### I. Whether the Individual Capacity Claims Against Maynard are Barred by Judicial Immunity

Maynard and Hodge (collectively "the Compliance Directors") argue that the claims against Maynard must be dismissed because they are barred by absolute judicial immunity. (Rec. Doc. 37-1 at 4). The Compliance Directors assert that at all relevant times, Maynard was the court-appointed Compliance Director for the

Orleans Parish Jail and was appointed by Judge Africk to implement a Consent Judgment relating to conditions of confinement. (Rec. Doc. 37-1 at 4). They emphasize that the *Jones* Court's Stipulated Order provides that the Compliance Director is "answerable only to the Court," and is "a representative of the Court [rather than] an employee of OPSO." (Rec. Doc. 37-1 at 5). The Compliance Directors contend that the position of Compliance Director is analogous to that of a court-appointed receiver because the Compliance Director possesses all the relevant characteristics and derives his authority entirely from and is answerable only to the Court. (Rec. Doc. 37-1 at 6). Thus, the Compliance Directors assert that Maynard is entitled to absolute judicial immunity for actions taken within the scope of his court-granted authority. (Rec. Doc. 37-1 at 6). While they acknowledge that the Stipulated Order granted the Compliance Director final authority to terminate the employment of contractors and individual employees who have attained the rank of Captain or higher only for misconduct, failing to satisfy job expectations, financial prudence, operational efficiency, or inhibiting progress toward Consent Judgment Compliance (Rec. Doc. 37-1 at 5, 6), they emphasize that Plaintiff's termination from his position as captain for failing a drug screen falls within the scope of the Compliance Director's authority (Rec. Doc. 37-1 at 10, 11).

Plaintiff argues in opposition that the Compliance Directors are not entitled to absolute judicial immunity because they are not officers of the *Jones* Court. (Rec. Doc. 41 at 9). Plaintiff avers that the Compliance Directors "are simply what the Stipulated Order expressly says that they are: independent contractors appointed by

Sheriff Gusman to administer the Orleans Parish Justice Center per the terms of the parties' negotiated settlement...." (Rec. Doc. 41 at 9-10). Nevertheless, Plaintiff argues that even if the Compliance Directors are "officers" of the *Jones* Court, they are still not entitled to any form of judicial immunity because Maynard's decision to terminate Plaintiff was administrative, not adjudicative. (Rec. Doc. 41 at 11, 13). In support of this argument, Plaintiff asserts that (1) Maynard was acting not as an objective adjudicator, but as the appointee of Sheriff Gusman and (2) Maynard's decision did not afford Plaintiff any procedural safeguards prior to termination. (Rec. Doc. 41 at 18).

In reply, the Compliance Directors maintain that they share in the absolute immunity of the Court that appointed the Compliance Director to bring the Orleans Parish Jail into compliance with the Court's judgment. (Rec. Doc. 44 at 4). They first note that the Compliance Director derives his authority entirely from the Court. (Rec. Doc. 44 at 4). They reject Plaintiff's contention that the Stipulated Order is merely a contract whereby Sheriff Gusman delegated some of his authority to the Compliance Director, noting that the Stipulated Order is an order of the Court (not merely an agreement between the parties) and is an exercise of the Court's authority (not a voluntary delegation of Sheriff Gusman's authority). (Rec. Doc. 44 at 4-5). The Compliance Directors also assert that Maynard's termination of Plaintiff was a "judicial" act entitled to absolute immunity because the Compliance Director is the functional equivalent of a receiver and the challenged actions arise out of and directly concern the litigation before the court. (Rec. Doc. 44 at 6-8).

The position of Compliance Director was created by a Stipulated Order of the Court in order to bring the Orleans Justice Center into compliance with a prior Consent Judgment entered in the case. *Jones et al. v. Gusman*, Civil Action No. 12-859, Ecf. No. 1082 (E.D. La. June 2013). The Consent Judgment emerged from a class action lawsuit against the Orleans Parish Prison initiated by prisoners in April 2012. The district court judge approved a Consent Judgment requiring Sheriff Gusman to implement "systemic and durable reforms to address pervasive and longstanding problems at the jail." *Id*. In April 2016, the plaintiffs filed a motion asking that the Court appoint a receiver to carry out the remedies specified in the Consent Judgment. *Jones et al. v. Gusman*, Civil Action No. 12-859, Ecf. No. 1009. After evidentiary proceedings, all parties and the Court signed a Stipulated Order. *See* Ecf. No. 1082. The Stipulated Order vests the Compliance Director with "final authority to operate" the Orleans Justice Center and all jail facilities. *Id*. The Stipulated Order also provides that the Compliance Director is "answerable only to the Court." *Id*. at 3.

The Supreme Court has clearly articulated that the question of absolute judicial immunity necessitates a functional approach. *Forrester v. White*, 484 U.S. 219, 223 (1988). This approach requires examination of the "nature of the functions with which a particular official or class of officials has been lawfully entrusted." *Id*. Further, a court must "evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise" of such functions. *See id*. "Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good

faith and within the scope of the authority granted to the receiver." *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995).

Courts in the Eastern and Middle Districts of Louisiana have previously dismissed suits against the Compliance Director on the basis of judicial immunity. *See Crawford v. Gusman*, No. CV 17-13397, 2018 WL 3773407, at *2 (E.D. La. Aug. 9, 2018) (holding that the Compliance Director is a court-appointed receiver who is entitled to derivative judicial immunity); *Crittindon v. Gusman*, No. CV 17-512, Ecf. No. 78 (M.D. La) (finding that the Compliance Director was "essentially analogous to a court-appointed receiver," and "the law provides as a matter of law for immunity as a quasi-judicial officer").

In the present case, the Court concludes that the record supports a finding that the Compliance Director is a court-appointed receiver who is entitled to derivative judicial immunity from Plaintiff's federal and state law claims. The Compliance Director is a position that was both created and funded by the Court and charged with implementing the substantive measures detailed in the Court's Consent Judgment. Plaintiff attempts to argue that the Compliance Director is not entitled to judicial immunity because the decision to terminate Plaintiff was administrative. However, Plaintiff has produced no facts to suggest that the challenged action was not taken in good faith, nor has he shown that his termination was outside the scope of the Compliance Director's authority. Specifically, the Stipulated Order gave the Compliance Director the final authority to discipline and terminate employees who had attained the rank of Captain or higher for misconduct, failing to satisfy job

expectations, financial prudence, operational efficiency, or inhibiting progress toward Consent Judgment compliance. *See Jones*, Ecf. No. 1082 at 12. There is no dispute that Plaintiff's drug screen tested positive for oxycodone and he was unable to produce a prescription. The record reflects that it was squarely within the Compliance Director's authority to terminate Plaintiff for any of the reasons outlined in the Stipulated Order on the basis of his drug test results and subsequent failure to produce a prescription. Based on the foregoing, Maynard is immune from individual liability with respect to Plaintiff's federal and state law claims.

## II. Whether the Official Capacity Claims Against the Compliance Directors are Barred by Sovereign Immunity

The Compliance Directors also argue that the Court lacks subject matter jurisdiction over Plaintiff's claims against them in their official capacities[1] because the Compliance Director is an officer of the court and the claims are, therefore, barred by sovereign immunity. (Rec. Doc. 37-1 at 11). They assert that the "real party in interest" in an official capacity suit is the governmental entity, not the named official. (Rec. Doc. 37-1 at 11, 12). Given that the Compliance Director is "an officer or agent of the Court and the functional equivalent of a court-appointed receiver" and the United States has not expressly waived its sovereign immunity in suits involving a discretionary function or duty or involving injunctive relief like in the instant case, the Compliance Directors argue that they are entitled to sovereign immunity, and

---

[1] Maynard was sued in part in his official capacity, and Hodge was sued solely in his official capacity. (Rec. Doc. 36 at 1-2).

the Court lacks jurisdiction over the claims asserted against them in their official capacities. (Rec. Doc. 37-1 at 12).

In opposition, Plaintiff argues that the Compliance Directors are not entitled to derivative federal sovereign immunity because they are mere independent contractors who violated both federal law and the express terms of the Stipulated Order by terminating Plaintiff's employment without cause.[2] (Rec. Doc. 41 at 6).

In reply, the Compliance Directors argue that they are entitled to sovereign immunity because the Compliance Director is an officer or agent of the *Jones* Court. (Rec. Doc. 44 at 1). In arguing that Plaintiff has no valid argument that the Compliance Director is merely a contractor of Sheriff Gusman, they emphasize that "[f]ederal district courts in Louisiana that have considered this issue have repeatedly held that the Compliance Director is an officer or an agent of the federal court that appointed him." (Rec. Doc. 44 at 1). Accordingly, the Compliance Director is entitled to share in the sovereign immunity that protects the judges of the Eastern District of Louisiana. (Rec. Doc. 44 at 2). The Compliance Directors dispute the applicability of *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), noting that (1) the Compliance Director is not a mere contractor[3] and (2) Plaintiff has not alleged facts sufficient to establish that Maynard was acting without any authority whatsoever or without any colorable basis for the exercise of authority when he terminated Plaintiff's employment. (Rec. Doc. 44 at 2-3). In sum, the Compliance Directors contend that

---

[2] However, Plaintiff concedes that the Compliance Directors are "charged with running the Orleans Justice Center" and "report[] not to Sheriff Gusman but to the *Jones* court." (Rec. Doc. 41 at 6).
[3] The Compliance Directors emphasize that the *Jones* Court explained that the Compliance Director is an "agent or officer or extension of the Court." (*See* Rec. Doc. 44 at 3).

Plaintiff's official-capacity claims against them must be dismissed because the Compliance Director is not the proper defendant for an official-capacity suit seeking damages from the Orleans Parish Sheriff's Office. (Rec. Doc. 44 at 8). Rather, Plaintiff's claims must be asserted against the Sheriff. (Rec. Doc. 44 at 8).

The issue before the Court is whether federal sovereign immunity precludes the Court from exercising jurisdiction over Plaintiff's claims. "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). Thus, suits against officials or agencies of the United States are barred unless there is a waiver of sovereign immunity. *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in the statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996). In the absence of an express waiver of sovereign immunity, a federal court lacks jurisdiction to adjudicate claims against sovereign defendants. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature. [Thus,] the terms of [the United States'] consent to be sued in any court defines that court's jurisdiction to entertain the suit.") (internal quotation marks omitted). A plaintiff bears the burden of showing Congress' unequivocal waiver of sovereign immunity in a suit against federal agencies or officials. *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

Here, this Court found that the record supports a finding that the Compliance Director is a court-appointed receiver. Moreover, federal district courts in Louisiana

that have been faced with this issue have held that the Compliance Director is an officer or agent of the federal court that appointed him. *See Crawford v. Gusman*, No. CV 17-13397, 2018 WL 3773407, at *2 (E.D. La. Aug. 9, 2018); *Crittindon v. Gusman*, No. CV 17-512, Ecf. No. 78 (M.D. La); *Henry v. Gusman*, No. CV 18-4661, Ecf. No. 32. This is consistent with Judge Africk's decision to adopt an order confirming that "the [Compliance] Director is now and since the inception of his office has been an officer or agent of the Court and the functional equivalent of a court-appointed receiver." *See Jones v. Gusman*, No. CV 12-859, Ecf. No. 1203. Based on the foregoing, the Court concludes that the Compliance Director is entitled to share in the Court's sovereign immunity.[4] Accordingly, Plaintiff's claims against the Compliance Directors in their official capacity must be dismissed for lack of subject matter jurisdiction. *See Ecker v. United States*, 358 F. App'x 551, 552–53 (5th Cir. 2009) (sovereign immunity deprives the Court of subject matter jurisdiction).

### III. Whether Plaintiff Has Failed to State a Claim for Relief Against Sheriff Gusman under § 1983

Sheriff Gusman raises three arguments in support of his motion to dismiss the claims against him pursuant to Rule 12(b)(6). (Rec. Doc. 38-1 at 2). First, Sheriff Gusman argues that Plaintiff had no constitutionally protected property interest in his job because he was an at-will employee and the Stipulated Order did not vest Plaintiff with a constitutionally protected property interest in his employment. (Rec. Doc. 38-1 at 3, 4).[5] In the alternative, Sheriff Gusman contends that if this Court

---

[4] Plaintiff makes no argument that there has been a clear and unequivocal waiver of sovereign immunity.
[5] Sheriff Gusman's motion mirrors the arguments asserted by the Compliance Directors in their motion to dismiss.

finds that Plaintiff had a constitutionally protected property interest in his employment with the Orleans Parish Sheriff's Office, this Court should nevertheless dismiss Plaintiff's claims against Sheriff Gusman because he is entitled to qualified immunity. (Rec. Doc. 38-1 at 9). Sheriff Gusman argues that even if Plaintiff could successfully argue that he violated Plaintiff's constitutional rights, Plaintiff would still have to show that his right was "clearly established" to avoid Sheriff Gusman's qualified immunity. (Rec. Doc. 38-1 at 10). Given that Plaintiff cannot show that such a property interest, if it even exists, is "clearly established," Sheriff Gusman argues that the claims against him must be dismissed on the basis of qualified immunity. (Rec. Doc. 38-1 at 10, 11).

Plaintiff argues in opposition that Sheriff Gusman is not entitled to quasi-judicial immunity or qualified immunity because Plaintiff's claims against him are really asserted against the political subdivision of Sheriff Gusman's office, and binding precedent instructs that "a defendant sued in his official governmental capacity has no absolute or qualified immunity defense." (Rec. Doc. 41 at 11-12). In reply, Sheriff Gusman re-urges his argument that Plaintiff has failed to state a claim because the Stipulated Order did not vest Plaintiff with a constitutionally protected property interest in his continued employment.

At the outset, the Court rejects Sheriff Gusman's argument that he is entitled to qualified immunity with respect to Plaintiff's § 1983 claim, which is asserted against Sheriff Gusman in his official capacity. The Fifth Circuit has made clear that "the personal defense of qualified immunity does not apply to official-capacity claims."

*Stallworth v. Slaughter*, 436 Fed. Appx. 337, 340 (5th Cir. 2011). Thus, Sheriff Gusman is entitled to dismissal of the § 1983 claim against him only if Plaintiff had no constitutionally protected property interest in his continued employment with the Orleans Parish Sheriff's Office.

To state a claim under § 1983, plaintiffs must allege two elements: "first, that they were deprived of a right or interest secured by the Constitution and laws of the United States, and second, that the deprivation occurred under color of state law." *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). "In order for a person to have a property interest within the ambit of the Fourteenth Amendment, he 'must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). In general, a state employee who can be fired only for misconduct or just cause has a property interest in his continued employment and must be afforded due process prior to termination. *Givs v. City of Eunice*, 512 F. Supp. 2d 522, 545 (W.D. La. 2007), *aff'd*, 268 F. App'x 305 (5th Cir. 2008). However, an employee who is terminable at will generally has no constitutionally-protected property interest. *See Muncy v. City of Dallas*, 335 F.3d 394, 398–99 (5th Cir. 2003).

In Louisiana, employment is deemed at-will unless it is for a definite term. *Meredith v. LA. Fed. Of Teachers*, 209 F.3d 398, 403 (5th Cir. 2000). "Under Louisiana's employment at-will doctrine, both employers and employees are free to

end the employment relationship at any time, and for any reason, without liability, provided that the termination violates no statutory or constitutional provision." *See* La. Civ. Code art. 2747; *Johnson v. Delchamps, Inc.*, 897 F.2d 808, 810 (5th Cir. 1990). Louisiana law recognizes a presumption that employment is "at will" unless there is a specific statutory requirement or the relationship has been altered by express contract limiting the conditions of an employee's termination. *See* La. Civ.Code art. 2747; *Jackson v. E. Baton Rouge Parish Indigent Defender's Bd.*, 353 So.2d 344, 345 (La.App. 1 Cir. 1977).

Whether Plaintiff has stated a claim for deprivation of his property without due process of law "depends on [him] having had a property right in continued employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (footnote and citations omitted). "[A] state or local government requirement of *good* or *just* cause for termination precludes arbitrary termination and therefore creates a property right in continued employment free from arbitrary termination." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir.1988) (footnote and citations omitted) (emphasis in original). A property interest is derived from an independent source such as a contract, state law, or "through the existence of rules and understandings, promulgated and fostered by state officials, that may justify [a plaintiff's] legitimate claim of entitlement to continued employment absent sufficient cause." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988). For this reason, a property interest "cannot be defined by the procedures provided for its deprivation." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

The Fifth Circuit recently affirmed a district court's ruling that Texas Government Code Section 614.023 did not vest the plaintiff police officer with a constitutionally protected property interest in his continued employment. *See Stem v. Gomez*, 813 F.3d 205, 213 (5th Cir. 2016). The statute at issue provided that where a police officer who is covered by the statute has a complaint filed against him:

> (a) A copy of a signed complaint … shall be given to the officer … within a reasonable time after the complaint is filed.
> (b) Disciplinary action may not be taken against the officer … unless a copy of the signed complaint is given to the officer …
> (c) … [T]he officer … may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:
> > (1) the complaint is investigated; and
> > (2) there is evidence to prove the allegation of misconduct.

Tex. Gov't Code Ann. § 614.023. The plaintiff argued that he was deprived of due process under the Fourteenth Amendment when he was terminated without notice or a hearing after the mayor recommended plaintiff's discharge following the shooting death of a city resident. *Stem*, 813 F.3d at 208. Specifically, the plaintiff alleged that the statute created a "for-cause threshold for dismissal of an officer protected by the statute whenever either a citizen complaint or a criticism from inside city government 'may lead to disciplinary action.'" *Id.* at 211. In holding that the statute did not vest the plaintiff with a constitutionally protected property interest in his continued employment, the Fifth Circuit emphasized that "Section 614.023 certainly does not explicitly provide that an officer facing a complaint can only be terminated for cause." *Id.* at 212. "Before a property interest would exist, Section 614.023 would have to constrain the city in a meaningful way from discharging a protected employee. There

is *no property right if rules only provide considerations for the exercise of discretion*."
*Id.* (emphasis added). The Fifth Circuit concluded that the statute did not meaningfully limit the city's discretion because (1) the statute's protections apply only when the disciplinary action is based on the subject of a complaint,[6] (2) legislative drafters left the sufficiency of evidence to the discretion of state and local departments, and (3) the pre-termination procedure outlined in the statute did not alter an employee's status as an at-will employee. *Id.* at 213. A city's "'merely conditioning an employee's removal on compliance with certain specified procedures' does not necessarily mean that an employee has a substantive property right in continued employment." *Id.* (citing *Irby v. Sullivan*, 737 F.2d 1418, 1422 n. 4 (5th Cir. 1984) (quoting *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

In *Evans v. City of Dallas*, the Fifth Circuit also held that the plaintiff had no constitutionally protected property interest in his continued employment. 861 F.2d 846 (5th Cir. 1988). The city's personnel rules provided that, in the context of discharging a probationary employee like the plaintiff, "valid reasons must exist for such discharge or reduction, and the employee must be advised of these reasons." *Id.* at 848. Rejecting the plaintiff's argument that the "valid reasons" language was "reflective of a contract mandating that he not be terminated except for just cause," the Fifth Circuit held that "the requirement of valid reasons merely establishes a procedure through which termination must be accomplished." *Id.* at 849.

---

[6] "One implication is that in all other situations, an officer may be discharged for a good reason, a bad reason, or no reason without the process provided." *Id.*

Here, Plaintiff alleges that he became vested with a property interest in his job when Sheriff Gusman agreed to the Stipulated Order. Specifically, he argues that because the Stipulated Order granted the Compliance Director final authority to terminate employees who have attained the rank of Captain or higher for misconduct, failing to satisfy job expectations, financial prudence, operational efficiency, or inhibiting progress toward Consent Judgment compliance, Plaintiff was vested with a constitutional property interest in his job as captain. Plaintiff alleges that he was unlawfully denied due process when he was terminated without notice or a hearing.

The Stipulated Order provides, in pertinent part:

15. The Compliance Director will have final authority to create, modify, abolish or transfer employee and contractor positions; to recruit, hire, discipline, terminate, promote, demote, transfer, and evaluate employees and contractors ….

16. Notwithstanding the authority described in Paragraph D.15 above, with regard to (1) individual employees who have attained the rank of Captain or higher, and (2) contractors, termination of employment will be for misconduct, failing to satisfy job expectations, financial prudence, operational efficiency, or inhibiting progress toward Consent Judgment compliance.

19. The Compliance Director shall have the final authority to direct specific actions to attain or improve compliance levels, or remedy compliance errors, regarding all portions of the Consent Judgment, including but not limited to: (a) changes to Jail policies or standard operating procedures or practices; (b) personnel decisions ....

*Jones*, Ecf. No. 1082 at 12, 13.

Under the Fifth Circuit's reasoning in *Stem*, this Court concludes that the abovementioned provisions of the Stipulated Order do not vest Plaintiff with a constitutionally protected property interest because they merely provide

considerations for the Compliance Director's exercise of discretion and do not constrain the Compliance Director in any meaningful way from discharging employees like Plaintiff. While the protections referenced in Paragraph D.16 of the Stipulated Order apply to all employees who have attained the rank of Captain or higher, what constitutes "misconduct, failing to satisfy job expectations, financial prudence, operational efficiency, or inhibiting progress toward Consent Judgment compliance" is left entirely to the discretion of the Compliance Director. Paragraph D.19 explicitly grants the Compliance Director "final authority" with respect to personnel decisions. Additionally, the Stipulated Order does not mandate that the Compliance Director state the reason for termination in writing, adopt or create any due process procedures, limit his discretion to define an offense for which termination is appropriate, or adopt drug testing guidelines. Similar to the "valid reasons" language at issue in *Evans*, the reasons for termination outlined in Paragraph D.16 of the Stipulated Order merely establish a procedure for the accomplishment of termination. Based on the foregoing, Plaintiff's § 1983 claim against Sheriff Gusman must be dismissed.

## IV.     Whether Plaintiff Has Failed to State a Claim for Relief Under the LEDTL

Sheriff Gusman argues that Plaintiff cannot state a claim for relief under Louisiana Revised Statute § 49:1001 *et seq.* because "it is well-settled that the statute is not a vehicle for a wrongful termination claim, even if the employer failed to comply with the statute's requirements. (Rec. Doc. 38-1 at 11). Plaintiff contends that the

Louisiana First Circuit Court of Appeal has held that the Louisiana Employee Drug Testing Law ("LEDTL") provides a cause of action for damages. (Rec. Doc. 41 at 23).

Louisiana's drug-testing statutes ("LEDTL") do not "state that an employer's failure to follow the statutory requirements set forth therein will subject it to liability for wrongful termination, nor do they prohibit the employer from terminating an at-will employee under these circumstances." *Sanchez v. Ga. Gulf Corp.*, 2002-0904 (La. App. 1 Cir. 11/12/03), 860 So. 2d 277, 283, *writ denied*, 2004-0185 (La. 4/2/04), 869 So. 2d 877. Notably, no court has found a cause of action for wrongful termination of any type of employee based on a violation of the LEDTL since it was passed in 1990. Thus, this Court concludes that Plaintiff's claim under the LEDTL must be dismissed.

## CONCLUSION

Accordingly,

IT IS ORDERED that Maynard and Hodge's Motion to Dismiss **(Rec. Doc. 37)** is **GRANTED**. Plaintiff's claims against Maynard and Hodge in the above-captioned matter are hereby **DISMISSED with prejudice**.

IT IS FURTHER ORDERED that Sheriff Gusman's Motion to Dismiss **(Rec. Doc. 38)** is **GRANTED**. Plaintiff's claims against Sheriff Gusman in the above-captioned matter are hereby **DISMISSED with prejudice**.

New Orleans, Louisiana, this 25th day of March, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE